AETNA INS. CO. *v.* ROBERTSON, STATE REVENUE AGENT.

[88 South.  883, In Banc. No. 21871.]

1. MONOPOLIES.  *Suit by state for violation of Anti-Trust Law not affected by chapter on insurance.*

The state revenue agent has power to bring suits for the use of the state for penalties for violation of the anti-trust statutes, and this power is not affected by the provision of the chapter on insurance, empowering the insurance commissioner to supervise the insurance companies doing business in the state, and to see that the provisions of the insurance chapter are executed.   The anti-trust chapter and the insurance chapter are not so related as to give the insurance commissioner exclusive control of suits, or the power to direct suits to be brought for violating the Anti-Trust Laws, as they affect the business of insurance or the insurance companies.

2. RECEIVERS. *Chancery court may appoint receivers in attachment suits in chancery pendente lite for the property of non-residents.*

Where an attachment in chancery is sued out against non-residents under section 536, Code of 1906 (section 293, Hemingway's Code), and certain residents of the state having money, property, or effects of the nonresidents in their possession or under their control, some of whom are insolvent, are made parties defendant; and where the nonresidents are instructing their agents, so made parties defendant, to remit moneys, belonging to said nonresident, out of the state; and where the court has acquired jurisdiction of the persons of such nonresidents by their appearance and answer to the suit the court has power to appoint receivers as to the property, money, effects, and business in the state so as to preserve the subject-matter of the litigation *pendente lite.*

3. ATTACHMENT. *Statutory penalties for violating Anti-Trust Law held "indebtedness" within attachment statute.*

The words "demands founded upon any indebtedness, whether the same be legal or equitable," contained in section 536, Code of 1906 (section 293, Hemingway's Code), authorizing attachments in chancery against nonresidents, embrace statutory penalties for violating the Anti-Trust Law. *Western Union Tel. Co.* v. *Sullivan,* 70 Miss, 447, 12 So. 460.

4. ATTACHMENT. *What "effects" bound in hands of resident defendants stated.*

Under section 537, Code of 1906 (section 294, Hemingway's Code), providing that process served in attachment proceedings under that section "shall bind the effects or indebtedness from the time of such service," the service of process as therein provided on resident defendants binds all moneys, notes, accounts for premiums on policies, etc., in the hands of the resident agents at the time of the service and which come into his hands after the service and before the filing of answer, or, if no answer filed, until the return day. The word "effect" is a word of broad signification, broader than the word "goods," and covers all kinds of personal property (citing Words and Phrases, First and Second Series, Effects).

5. JUDGMENT. *"Nonresident" in chancery attachment suit held to include foreign insurance companies, and personal judgment is authorized on service on Insurance Commissioners.*

The word "nonresident," as used in section 536, Code of 1906 (section 293, Hemingway's Code), authorizing attachment in

chancery against nonresidents, includes insurance companies domiciled in other states which have not become domesticated under the laws of this state, although under the laws of this state process may be served upon the insurance commissioner, and when so served has the effect of authorizing the rendition of personal judgments against such insurance companies.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by Stokes V. Robertson, State Revenue Agent, against the Aetna Insurance Company, for violating the Anti-Trust Law and asking for appointment of receivers. From an order appointing receivers, defendant appeals. Affirmed and remanded.

The State Revenue Agent brought suit against the appellant and other insurance companies doing business in the state of Mississippi for violation of the Anti-Trust Laws, alleging that the insurance companies are nonresidents of the state of Mississippi, and that certain of the defendants or agents of said companies in the state of Mississippi represent said insurance companies, and that such agents are indebted to the insurance companies, the nonresidents, and that they have in their possession property, money, choses in action, and effects of the said insurance companies; that on or about the 1st day of January, 1908, the said insurance companies, and each of them, did enter into and become a party to an agreement and combination with each other and every other said insurance company to regulate and fix within this state and within the First district of Hinds county the price or premium to be paid for insuring property therein against loss or damage by fire, etc.; that said agreement and combination was a conspiracy to defraud, and contrary to the provisions of chapter 145, Code of 1906, and the amendments thereto (chapter 69, Hemingway's Code), and had the effect of and did injure the insuring public in said district, county, and state; that each and every day since said date said insurance companies, and each of them, have entered into and become a party to an agreement and combination with

each and every other said insurance company to regulate and fix the price or premium to be paid for insuring property within the said district, county, and state; that the manner of carrying out the said conspiracy was that each and every insurance company did appoint and authorize the Mississippi Inspection and Advisory Rating Bureau, a corporation, to declare and fix what rate was to be paid by the public for insuring such property; that the insurance companies and each of them, did enter into and become a member to an agreement and combination with each and every other said insurance company to charge the public such price to be paid for insuring such property as the said Inspection and Advisory Bureau should fix; that said bureau would from time to time declare and fix the price or premium to be paid by the public to the said insurance companies for insurance in said district, county, and state, and throughout the state; that said insurance companies, and each of them, have daily since said date throughout the state issued policies and collected premiums thereon, which premiums were prescribed and fixed by the said Mississippi Inspection and Advisory Rating Bureau in conformity with the above-mentioned agreement, combination, and conspiracy to defraud; that each of the said insurance companies did contract, agree, and combine with each and every other insurance company to place the control of their business within the said district, county, and state, and throughout the state, to the extent of fixing the price or premium to be paid for insuring property, in the power of the said Mississippi Inspection and Advisory Rating Bureau; that said bureau did dictate and control, and have the power to dictate and control, the management of the business of the said insurance companies in the matter of fixing the price of the premium to be paid for insuring property within the said district, county, and state, and throughout the state; and that each of the said insurance companies did enter into and become a member to an agreement and combination with each and every other fire insurance company doing business in the state to maintain the price or

premium within the state as fixed by the said rating bureau, and have daily since said date maintained the price or premiums to insure property within the state and throughout the state as fixed by said rating bureau; that each and every of the said agreements and combinations were and are inimical to the public welfare, unlawful and criminal conspiracies, and does destroy competition in the matter of rates to be paid for insurance against loss or damage by fire in the said district, county, and state and throughout the state, and did injure the insuring public within the said state and throughout the state. The bill prayed that the said insurance companies and their agents named in the bill be made defendants and served with process, requiring them to appear and answer the bill, and that the agents are required to answer on oath as to whether they are indebted to the defendant insurance companies, and whether or not they have in their hands any money, choses in action, property, or effects of the said defendant insurance companies, and that this process, subjecting the indebtedness, money, choses in action, property, and effects of the nonresident defendants, be made returnable to the January, 1921, term of the court, and that the complainant prays that on final hearing that each of the defendant insurance companies be penalized for each and every day that said insurance companies violated the Anti-Trust Laws of the state in the sum of five thousand dollars; and that the defendant insurance companies be restrained and forever enjoined from further continuing and maintaining the conspiracy above set out.

On this bill an attachment in chancery was issued in accordance with the provisions of section 536, Code of 1906 (section 293, Hemingway's Code), and summons was served upon the Insurance Commissioner for each of said nonresident insurance companies under the provisions of the statute on that subject, and summons was served upon each of the resident agents who were made defendants in the bill.

The appellant, together with the other non-resident insurance companies, appeared and answered the bill, as did also the several resident agents who were resident defendants. The answer denied that all of the nonresident insurance companies were engaged, on or about the 1st day of January, 1908, in the business of insuring property against loss or damage by fire, but admitted that they were among the important insurance companies insuring property within the state; admitted that they are in a sense nonresidents of the state of Mississippi; admitted the allegations with reference to the agents made defendants being the agents of the nonresident insurance companies, and the agents mentioned did have in their possession property or money or effects belonging to the defendant insurance companies. They denied entering into the agreement charged with reference to the agreement or conspiracy to fix the price or premium to be paid for insuring property in the state of Mississippi against loss or damage by fire, and denied that they have made any agreement which constituted a conspiracy to defraud, or which was contrary to the provisions of chapter 145, Code of 1906, and the amendments thereto (chapter 69, Hemingway's Code), or any other law of the state which has the effect of and did injury to the insuring public in the said county, district, and state. They denied that each and every one of them, or any of them, did appoint the Mississippi Inspection and Advisory Rating Bureau, or other rating bureau, or company, association, or person, to declare and fix what was the rate to be paid by the public for insuring property in the state against loss or damage by fire, and denied that they or either of them had become a member of the agreement or entered into any agreement to insure property at whatever price said rating bureau should fix, and denied that said bureau would from time to time declare and fix what price or premium should be paid for insuring property within the state, or that said bureau notified them, or either of them, of any rates fixed, and denied that they or either of them, have daily since said date, or before or

since, at any time within the said district, county, or state, or any part of the state, issued policies and collected premiums, which premiums were those prescribed and fixed by said bureau, as charged in the bill. They further denied that they agreed, combined, or consented. to place the control of their business within the said district, county, and state, or throughout the state, or in any part of the state, to the extent, or to any extent whatever, of fixing the price or premium to be paid for insuring property for any purpose whatever, in the power of the Mississippi Inspection and Advisory Rating Bureau. They further deny that they did contract and agree or combine with each other, or with any insurance company, by which any person other than themselves and their proper agents, officers, and employees, by which the Mississippi Inspection and Advisory Rating Bureau, or any other person or bureau, did dictate, or have any power to dictate or control, the management of their business in the matter of fixing the price or premium to be paid for insuring property within the said state, or any part of the state, against loss or damage by fire, or for any other purpose. It further denied entering into any agreement or combination with each other or any insurance company to maintain the price or premium to be paid within the state, or any part thereof, after the price to insure had been determined by said rating bureau, or any other bureau or person whatever, and denied that they have daily, before or since, maintained any such price.

The defendants then allege that since their entrance into the state of Mississippi or engaging in the insurance of property against the loss or damage by fire or otherwise they have endeavored to comply with the laws of the state, and to charge such rates as are just, reasonable, and fair to the public and the insured and themselves. They admit that the rates were substantially uniform as to such rick or property which each undertook to insure against loss or damage, but alleged that the rates were practically and substantially uniform, not by reason of any agreement,

combination, or conspiracy to fix rates but from the necessities and exigencies of the business; that insurance rates must be more or less uniform, that is, what is reasonable rate for one insurance company must necessarily be reasonable for all other insurance companies under similar circumstances and conditions.    They then alleged that the Mississippi Inspection and Advisory Rating Bureau is a corporation of the state of Mississippi, incorporated under the laws thereof, and by its charter is authorized "to inspect risks, classify and promulgate advisory rates of insurance for the public on all classes of property subject to insurance, both fire and marine, and to suggest a proper means of construction and maintenance and protection to buildings so as to prevent, as far as possible, waste from fires, and to reduce the price of insurance on same for the benefit of all parties interested; and for said purpose shall be authorized to print and sell in printed form rates and suggestions so made and to otherwise charge reasonable fees for its service;" that the Advisory Rating Bureau was incorporated in August, 1903, and has been in operation from that time to the present time; that said Advisory Rating Bureau is not an insurance company, and was not organized, or suggested by, or controlled, now or at any other time, by the defendants, or any of them, and that none of the defendants have any interest in the said bureau as stockholders or otherwise, and that the defendants, and none of them, in any way, or to any extent, controlled the Advisory Rating Bureau, nor does the Advisory Rating Bureau to any extent control the defendants, or any of them, in the matter of fixing rates or otherwise; that its relation to the defendants was purely advisory and to such extent as the defendants might act independently, see fit to adopt, or be guided by the rates advised by the said rating bureau.    They admit that they have, or nearly all of them have, subscribed to one more contract with the rating bureau to furnish them or their agents in Mississippi from time to time with rates and other information pertinent to and which might be of assistance in fixing reason-

able and fair rates; that they were in no way bound by
any of the rates or by the advice of the said rating bureau,
but by contract it was expressly stipulated that no ob-
ligation, express or implied, direct or indirect, rested upon
the companies to subscribe to, observe, and maintain the
rates, and no such obligation, express or implied, direct
or indirect, to observe and maintain the rates advised by
the rating bureau; that the defendant insurance companies
furnished their agents throughout the state with rates
and information promulgated from time to time by said
Advisory Rating Bureau, simply as a matter of advice and
guidance for the said agents in issuing policies on fire
risks; that in doing so they are acting independently of
each other, without any agreement or combination among
themselves or with each other to adopt or accept the rates
of the said rating bureau, and are without obligation to
use the said rates; that the said rates fixed by the Advisory
Rating Bureau are not provided alone for the benefit of
the insurance companies, but are provided also for the
general public; that the primary purpose of the establish-
ment of the said rating bureau was to protect the public
against unjust discrimination and rates, and to prevent,
as far as possible, waste and expense, and to reduce the
price of insurance for all parties interested to its actual
value.

They further allege in the answer that experience has
shown that the said Advisory Rating Bureau was reliable
and efficient, and that the rates advised by it were just and
reasonable and fair; that it would not be practicable, ex-
cept at very great expense, for each insurance company
to employ its own experts for determining a character of
the risk and rate to be charged; that the use of the rates
promulgated by the Advisory Rating Company have given
general satisfaction to the public, and but few complaints
have been made that the rates were in any respect unfair
and unreasonable, and, wherever complaint has been made,
they have generally been adjusted to the satisfaction of
the parties, either through the instrumentality of the Ad-

visory Rating Bureau, acting on behalf of the insured, and the fact that agents of many of the defendants throughout the state of Mississippi have·been using rates advised or information given by the said rating bureau that resulted in the fact that the rates are practically and generally uniform, but that the rates used by the agents were not by reason of any agreement, combination, or conspiracy to fix rates of insurance, but that they acted at all times upon their independent judgment and discretion. It is further alleged that their practices were known to the general public and the officers of the state, and especially to the Insurance Commissioner, and that the Insurance Commissioner is clothed with broad and sweeping powers to investigate all insurance companies, to issue and revoke licenses of all insurance companies guilty of violating the laws of the state obligatory upon them, and through all these years the Insurance Commissioner knew of and approved the use of uniform rates by the insurance companies in insuring property in the state, and of the use by the insurance companies·of the rates and information furnished by the rating bureau, and at no time has the Insurance Commissioner objected to these things; that the rating bureau was authorized by the state to advise as to reasonable·rates, and sell such information to the public generally, including the defendants, and that to subject the defendants to cumulative penalties for carrying on their business in the manner it was conducted, with the sanction· of the Insurance Commissioner, clothed as he is with the powers and duties to enforce, as to the defendants, any and all laws of the state affecting them, would be unjust and oppressive, and would be depriving the defendants of their liberty and property without due process of law, etc.

They state that since the filing of the original bill some of them have ceased to write insurance for the time being in the state of Mississippi, but aver that this was not done in the performance of any agreement, understanding, or combination with each other, or among themselves, for the

purpose of monopolizing the business of the state or district or county, or the prosecution or management or control of the business of writing policies in the state of Mississippi, but that it was done by each one, so far as it has been done, acting independently upon its own judgment and discretion; and aver that their business in Mississippi has been unprofitable, and, being confronted with a claim on the part of the state for an enormous and excessive penalty, which if imposed would destroy them, and the fact that the complainant has attached all of their available funds in the state of Mississippi, it was not practicable to continue to write insurance in the state, and they were not advised how they could continue business in the state without rendering themselves liable to further suits and penalties; that under the law they have the right to cancel policies and to carry on or withdraw business at their discretion.

After the filing of the bill and answer, the insurance companies wrote to their several agents in the state letters, advising the agents, who were defendants in the suit, that the service of process only bound money and property actually held by the agents at the time of service, and did not bind moneys collected subsequent to the service of process, and that the agents are not required to report sums collected since that date, and instructed the agents:

"It is our judgment, that the agents could remit, and should remit, not only for premiums on policies written since the date of the summons," but for unpaid premiums on policies written before the date of the service of the summons, provided the collection of the premiums was actually made since the date of the summons.

The attorneys for the insurance companies also prepared suggested answers for their agents, to which answers they stated sums of money then in their possession, but did not answer as to the amount shown to be due by their books to the insurance companies on uncollected premiums, nor state specifically what other properties were in their possession, nor did the answers disclose property received

for the companies between the date of the service and the date of the filing of the answer.

Thereupon the Revenue Agent filed a petition for the appointment of receivers, setting up the fact that the insurance companies were withdrawing their funds and property from the state, which motion for a petition for receivers was answered and resisted by the defendant insurance companies, and an agreement was entered into as follows:

"It is agreed that there are certain witnesses present in court who formerly were agents of certain nonresident fire insurance companies sued in this cause at the time of the filing of the original bill and service of process and on the return day thereof, who will swear to the following facts:

"(1) That they received from their principal a certain circular letter, a copy of which is hereto attached, marked Exhibit A, which letter, it is agreed, was from the attorneys representing the insurance companies, and was sent, or endeavored to be sent, to each agent of the nonresident fire insurance companies involved in this suit.

"(2) That certain agents in Mississippi of some of the nonresident fire insurance companies involved in this suit acted upon the opinion of the companies' attorneys therein contained, and at the request of the special agents of the company remitted some moneys to their principal which came into their hands after the service of the writ and before the return day.

"(3) That the special agents of certain companies, acting upon the opinion given the companies by their attorneys, as shown in Exhibit A hereto, attempted to collect, and did collect, from certain policy holders who had not paid their premiums, the premiums on said unpaid policies, for which remittance has been made direct to the principal by such special agents, the said premiums being the premiums payable for policies written prior to the service of the writ on the agents; it being the contention of the insurance companies that such funds mentioned in clause

2 and clause 3 herein were not bound by the attachment proceeding issued herein.

"(4)    It is further admitted that some of the fire insurance agents representing some of the nonresident fire insurance companies in this case, and having in their hands funds belonging to such nonresident insurance companies, are now insolvent."

Certain testimony was taken which showed that when policies were written by the agents where the premiums were not collected in cash, they were charged on the books of the agent or agency, and that, under the practice between the company and the agent, the agent had sixty days in which to collect and remit to the companies those premiums, and if the agent did not collect the premium within the sixty days, and had not in the meantime had the policy canceled, they paid the premium themselves; that the premium as between the insurance company and the agent was supposed to be a cash transaction, with the privilege of payment within sixty days after the policies were written; that if the agent desired to cancel a policy because the premium was not paid, he could do so, and the insurance company would credit him with the unearned premium, he being required only to account for the premium for the time the policy was outstanding, and, in some cases, he received credit for the full amount on canceling a policy within a given time.

The chancellor appointed receivers and granted an appeal to this court to settle the principles of the case.

*J. H. Doyle, R. L. McLaurin* and *Watkins, Watkins & Eager,* for appellant.

*Clayton D. Potter* and *Chalmers Potter,* for appellee.

ETHRIDGE, J., delivered the opinion of the court (after stating the facts as above).

The first question presented for decision under the assignments of error is whether the revenue agent has a right

to institute suit against these defendants under the anti-trust statute. In other words, it is contended by the appellant that as to the insurance companies the insurance commissioner has the sole and exclusive power of instituting suit, by directing the attorney general or the district attorneys to institute same. This contention is based upon certain statutes in the Insurance chapter of the Code. Section 2550, Code of 1906 (section 5014, Hemingway's Code), reads as follows:

"There is hereby established in this state a separate and distinct department of insurance, which shall be charged with the execution of all laws now in force or which may be enacted hereafter, relative to all insurance, including indemnity or guarantee and other companies, . . . associations or orders placed under this department."

Section 2554, Code of 1906 (section 5018, Hemingway's Code), reads as follows: .

"The commissioner shall be vested with all the powers, and charged with all the duties, and subject to all the obligations and penalties now vested in, conferred and imposed upon the secretary of state, auditor of public accounts, state treasurer, or any other officer charged with the execution of laws relative to subjects recited in the first section of this chapter."

Section 2561, Code of 1906 (section 5026, Hemingway's Code), reads as follows:

"Whenever it shall appear to the commissioner from any report submitted or examination made under the provisions of this chapter or otherwise, that any of said companies or orders has failed to comply with the law, or if it, its officers or agents, refuse to submit to examination or to perform any legal obligations in relation thereto, or that its condition is such as to render its further proceeding hazardous to the public or its stockholders or policy holders, it shall be the duty of the attorney general, or the district attorney under his direction, on notice by the commissioner to institute such proceedings as are authorized by law and to prosecute the same to final judg-

ment, and the commissioner shall also revoke or suspend all certificates of authority granted to such concern or its agents to do business in this state, as hereinafter provided."

It is the contention of the appellant that under these sections the insurance commissioner has been vested with the exclusive power of bringing suits to enforce statutes which are obligatory upon insurance companies; that the language of these statutes, construed in the light of the numerous powers conferred upon the insurance commissioner to regulate the business of insurance companies, and to grant license and revoke license, conferred upon him the exclusive power to deal with these subjects.

The suit was brought for a violation by the insurance companies of the provisions of chapter 145, Code of 1906, and amendments thereto (chapter 69, Hemingway's Code).

By section 5004, Code of 1906, as amended by the Laws of 1910, chapter 222 (section 3286, Hemingway's Code), it is made the duty of the district attorney and of the attorney general to enforce these laws and to recover the penalties for the violation of these laws. Section 3286, Hemingway's Code, reads as follows:

"Any person, corporation, partnership, firm or association, or any representative or agent thereof, violating any of the provisions of this chapter, shall forfeit not less than twenty dollars nor more than five thousand dollars for every such offense, and each day any person, corporation, partnership, firm, or association, shall continue to do so, shall be a separate offense; and the penalty in such cases can be recovered by the state on the relation of the attorney general or district attorney; and it shall be the duty of the several circuit judges to specially call the attention of the grand juries to this provision; but no prosecution, pain, penalty or forfeiture for offenses committed under laws already existing at the time of the adoption of this act, shall be in any wise remitted, released or taken away by reason hereof or anything herein contained, but the same shall be proceeded with, adjudged,

imposed and inflicted in conformity with laws already existing and in conformity with all the provisions of chapter 145, Code of Mississippi of 1906, which may be constitutionally applicable thereto."

The statute above quoted placed the enforcement of the Anti-Trust Laws upon the attorney general and district attorney specifically without reservation or condition, and, in our opinion, this action is not dependent upon the direction of the insurance commissioner.,

By section 4738, Code of 1906 (section 7056, Hemingway's Code), the state revenue agent is given power as follows:

"The state revenue agent may appoint a sufficient number of deputies. He shall have power and it shall be his duty to proceed by suit in the proper court against all officers, county contractors, persons, corporations. companies, and associations of persons for all past-due and unpaid taxes of any kind whatever, for all penalties or forfeitures for all past-due obligations and indebtedness of any character whatever owing to the state or any county, municipality or levee board, and for damages growing out of the violation of any contract with the state or any county, municipality, or levee board, and shall have a right of action and may sue at law or in equity in all such cases where the state or any county, municipality or levee board has the right of action or may sue. And in all cases of valuation or ownership of property which has escaped taxation, may have subpœnaed witnesses to testify before the board of supervisors, board of mayor and aldermen or levee board."

It will be noted by the express terms of this statute that the power of the revenue agent extends to bringing suits "for all penalties or forfeitures," and this court in *Dukate* v. *Adams, Revenue Agent,* 101 Miss. 433, 58 So. 475, expressly held that the provisions of the statute on trusts and combines conferring power upon the attorney general and district attorney to bring suit and enforce the Anti-Trust Laws was not exclusive, but that under the sec-

tion last quoted, giving power to the revenue agent to bring suit, embraced suits for the penalties imposed for the violation of the Anti-Trust Laws. The Anti-Trust Laws have been amended from time to time especially by the Laws of 1908, chapter 119 (Hemingway's Code, sections 3281-3284), and the Laws of 1910, chapter 222 (Hemingway's Code, sections 3286, 3287), and in none of these enactments enacted since the creation of the department of insurance has any reservation been made in favor of the insurance companies, or in favor of the insurance commissioner.

By section 2650, Code of 1906 (section 5116, Hemingway's Code), it is provided:   "Compliance with the provisions of this chapter, as to deposits, obligations and prohibitions, and the payment of taxes, fees and penalties by and upon foreign insurance companies, may be enforced by the commissioner by suit in the name of the state."

It will be noted that this power to bring suit is limited to certain specified subjects, and such subjects as are dealt with in the provision of the chapter on insurance. It is a general rule of construction that the enumeration of powers in a section will be held to exclude all powers not enumerated, and the insurance commissioner's power to bring suit in the name of the state is measured by the terms of this statute.   He may also give direction under the provisions of section 2561, Code of 1906, (section 5026, Hemingway's Code), to the attorney general or the district attorney as to the things therein provided for.

In our opinion the powers conferred upon the insurance commissioner have no relation to the bringing of suits for violation of the Anti-Trust Laws.   The Anti-Trust Laws are not germane to the subject of insurance. They are wholly unrelated, and, though insurance companies may violate the Anti-Trust Laws, that does not change the relation of the two chapters.   They deal with different subjects.   No. doubt it would be proper for the insurance commissioner to call attention of the attorney general or of the district attorney to the fact that the Anti-Trust Laws were

being violated by the insurance companies, should he discover that fact, and it would be the duty of the attorney general, on being so notified, to investigate the matter and bring suit should the facts justify his doing so. But it was not the purpose of the legislature in our view to give the insurance commissioner the exclusive right to bring suits against the insurance companies for. violating the Anti-Trust Laws.

There are many instances in the law where several different officers may institute a suit to represent the public. For instance, a board of supervisors may institute suits on behalf of the county; a district attorney has also power to bring suits on behalf of the county. The attorney general also may bring a suit on behalf of the county, as may also the revenue agent. In most of these cases each of these officers has the power to bring the suit, and as said in the case of *Robertson, State Revenue Agent,* v. *Bank of Batesville,* 116 Miss. 501, 77 So. 318, the first officer having the power to bring the suit has the right to conduct the litigation so long as he acts in good faith.

In certain cases the county treasurer is given the power to sue on behalf of the county; the board of supervisors also has the power, the district attorney has the power, and the revenue agent has the power. Indeed the state revenue agent's office was created expressly for the purpose of bringing suits that other officers could bring, but had neglected to bring, resulting in loss to the state, counties, and municipalities; and if the court should construe all statutes which give an officer power to sue as being exclusive, we would put the revenue agent out of business, contrary to the intention of the legislature and the public.

Again it is insisted that insurance is a business charged. with a public use, and that it does not, for that reason, come within the purview of the statute in 'reference to trusts and combines. It is hard to reconcile this contention with the express provisions of chapter 119, Laws of 1908 (section 3282, Hemingway's Code), which expressly prohibits the fixing or limiting of prices or pre-

miums to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by any corporation, partnership, or individual, or association of persons. The case of *Telephone Co.* v. *State,* 99 Miss. 1, 54 So. 446, is relied upon, but in our opinion that authority is inapplicable: First, because the statute expressly forbids the fixing or limiting of the price to be paid for insurance; and, second, no state authority has any power to fix the rate to be charged for insurance.

It is next insisted that the court was without authority to appoint receivers, and that it had no jurisdiction to do so. It will be noted from the statement of facts that the Revenue Agent sued out an attachment in chancery under section 536, Code of 1906 (section 293, Hemingway's Code), and that certain agents in the state having moneys, property, and effects of the insurance companies were made defendants, to the suit, and effects in their hands were impounded by the process so served. It would also appear from the statement of facts that the defendants had appeared and answered and submitted themselves to the jurisdiction of the court, and therefore the court had full jurisdiction over the defendants, and had the power of rendering a final judgment against each of the defendant insurance companies. It will also appear that after the filing of the bill and the answer the insurance companies were withdrawing their assets from the state, and had discontinued business in the state, having withdrawn from the state, as shown by their answer to the amended bill.

It is insisted that the word "penalties" is not embraced in the language of section 536, Code of 1906 (section 293, Hemingway's Code), and that therefore an attachment did not lie in chancery, and the court was without jurisdiction. This section reads as follows:

"The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, ex-

press or implied, or arising *ex delicto* against any nonresident, absent or absconding debtor, who has lands, and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident, absent or absconding debtor. The court shall give a decree *in personam* against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance."

The attachment lies under this section upon demands founded upon any indebtedness, whether the same be legal or equitable. It is contended that the word "indebtedness" does not embrace a statutory penalty. We think this court has settled this contention adversely to the appellant by the case of *W. U. Tel. Co.* v. *Sullivan,* 70 Miss. 447, 12 So. 460. In that case the statutory penalty was sought to be recovered in a justice of the peace court, and it was contended that the justice had no jurisdiction because the jurisdiction was not in terms applicable to penal statutes. The penalty there sought to be recovered was twenty-five dollars, and the justice's jurisdiction was limited to fifty dollars. The court in its opinion said:

"The language of the clause, 'founded on any penal statute,' contained in the Code of 1857, was left out of that of 1871, not to deprive justices of the peace of such jurisdiction, but because it was unnecessary to retain this language, in view of the very comprehensive terms employed by the section, which was manifestly designed to enlarge and extend, and not circumscribe, the jurisdiction of these magistrates. The word 'debts' embraces penalties recoverable by civil action. In its largest sense, it signifies anything for which one is liable or bound to another, or which may be exacted of one."

In the case of *Dollman* v. *Moore,* 70 Miss. 267, 12 So. 23, 19 L. R. A. 222, it was held that, independently of the statute, by virtue of its general equity powers, the court may, without a judgment at law and *nulla bona* return, subject to the demands of creditors the effects in this

state of a non-resident. That case was an attachment in chancery, where the attachment failed because the resident defendants, the trustees of a school, were not persons within the meaning of the statute. But the court held that equity had the power to take charge of the property of nonresident defendants and subject it to the demands of the resident.

In the case before us the court had jurisdiction of the defendants generally at the time of the appointment of the receivers, and its power to appoint receivers was not dependent upon the rightfulness of the attachment sued out; that is, not dependent upon the question of the statutory jurisdiction. It had jurisdiction both of the demand and of the person, and the court undoubtedly had power to prevent the defendants from withdrawing their property from the state so as to defeat the execution of any judgment it might render. Under the agreed statement of facts some of the agents were insolvent, and a judgment against them would have been fruitless. They were sending the funds coming into their possession out of the state, and it is possible that the judgment would not have been collected, if rendered, if this practice continued. 23 R. C. L., p. 9, section 3; page 13, section 7; 34 Cyc., pp. 17, 19.

The statute on trusts and combines expressly gives the chancery court jurisdiction and power to appoint receivers. Of course the power to appoint receivers may be considered to depend wholly upon the proper facts existing to warrant the court in so doing. But we think the facts here warranted the court in making the appointment. We do not think the power to appoint receivers is limited to chapter 213, Laws of 1914 (section 4086, Hemingway's Code), and chapter 142, Laws of 1912 (section 4087, Hemingway's Code), but that the power exists whenever it is necessary to preserve the subject-matter of the litigation while the same is pending.

It is contended that in no view was this a proper case for the appointment of a receiver, because it is contended

that by a reading of the petition for a receiver it will be seen it is based upon the fact that the answer filed by the resident defendants, the insurance agents, in response to the attachment, was not full, and did not disclose the funds which had come into their hands after the service of the writ; that they had only answered as to the funds actually in the hands of the resident defendants at the time of the service of the writ; and that the answer stated that the agents were not indebted to the principal defendants, and that they had no effects of the principal defendants on hand except certain stationery, premium books, and matters of that kind, office supplies, etc., of little value. The petition for the appointment of receivers alleged that the nonresident defendants had conspired to defeat the process of the court by instructing their agents throughout the state that their answers should only embrace moneys and effects at the time of the service of the writ, and that they had been requested to remit all moneys collected and coming into their hands after the service and up to the return day; further that the special agents of the insurance companies had gone throughout the state and instructed the local agents to remit all moneys coming into their hands after the service of the writ, and that this was done for the purpose of defeating the process of the court, and that by reason of this moneys would be placed beyond the jurisdiction of the court, and therefore receivers should be appointed.

It is contended that, inasmuch as according to the view of the appellant the suit only bound the effects in the hands of the agents at the time of the service, they had a right to remit out of the state; and that the insurance companies had the right to withdraw from the state all moneys collected between the service of the attachment and the return day, or between the service of the attachment and the date of filing the answer; and that, having this right, the court was not warranted in appointing receivers and directing the agents to turn over to the receivers the funds collected subsequent to the service of

the attachment.  Under the evidence and the agreement of counsel moneys collected subsequent to the attachment, but on policies issued prior to the attachment had been remitted in some instances to the insurance companies by their agents.

The appellant takes the position that the attachment served on the agents did not bind the accounts for premiums unpaid, but which had been contracted prior to the service of the attachment.  In section 537, Code of 1906 (section 294, Hemingway's Code), it is provided that the service of the process in the manner therein stated "shall bind the effects or indebtedness from the time of such service."  The appellee contends that the service not only binds the effects, etc., in the hands at the time of the process, but also all effects, etc., that come into the hands of the agents between the service and the return day.

We think the effect of the service of process is to bind all the effects of the non-resident defendants in the hands of the resident defendants at the time of the service, and at least until answer has been filed, or, if no answer is filed, until the return day.  We think that it includes and binds the premiums due upon policies written prior to the service of the process but which were collected subsequent to the service of the process.  These books of accounts and evidences of debt constitute effects.  The word "effects" is a word of very broad signification, and is broader than the word "goods."  It is broad enough at least to cover all personal property.  See Words and Phrases, First and Second Series, and Bouvier's Law Dictionary, title, "Effects."

Under the chapter on Process it is provided that money, bank notes, bills, evidences of debt, circulating as money, and any judgment or decree belonging to the defendant, may be taken under an execution or attachment, and sold or disposed of according to the law, and applied to the payment of the execution or in satisfaction of the judgment in attachment.  Section 3968, Code of 1906 (section 2975, Hemingway's Code).  By section 3969, Code of

1906 (section 2976, Hemingway's Code), it is provided that the purchaser of any chose in action, stock, share, interest, judgment, or decree of the defendant, sold under execution or attachment, shall become the owner thereof, in the same manner as if it had been regularly assigned to him by the defendant.

The attachment laws have in some cases been construed strictly by this court and in others as remedial and therefore liberally. They seem to partake of the nature of both remedial statutes and penal statutes. In some sense they are remedial, to be liberally construed, and in other respects as penal to be strictly construed. But, whether they are to be construed strictly or liberally, the court is to give such interpretation as would further the intention of the legislature.

We think in the present case the right to attachment existed on the allegations of the bill, and that the suit comes within the terms of the statute. It is argued that the statute does not apply, because the defendants are not nonresidents within the purview of that section, because they may be served personally with process and personal judgment rendered against them by serving process upon the insurance commissioner, who is by statute made the agent of the insurance companies for that purpose, and that that was done in the present case. It is true they may be served with process by serving the insurance commissioner, but nevertheless they are nonresidents, and a judgment for penalties cannot be imposed against them beyond the jurisdiction of this state. In other words, the state could not go into the state of the domicile of the corporations and sue them *in personam* and get a judgment and levy execution upon the judgment obtained in cases like the present in the state of Mississippi. That being true, the attachment will lie, and the effects in this state may be seized and held to await such judgment as may be rendered.

The judgment will be affirmed, and the cause remanded to be proceeded with.

*Affirmed and remanded.*

ANDERSON, J. (dissenting).

I dissent from the majority opinion. The court holds that under section 4738, Code of 1906 (section 7056, Hemingway's Code), giving the Revenue Agent the right to sue for and recover all penalties and forfeitures due the state, any county, municipality, or levee board, and section 5004, Code of 1906 (section 3286, Hemingway's Code), which is a part of the chapter on Trusts and Combines, which, among other things, provides that the penalties therein denounced for violation of the Anti-Trust Statutes "can be recovered by the state on the relation of the attorney general or district attorney," the state revenue agent and the attorney general, or proper district attorney, had the concurrent right to bring this suit.

In my judgment the state revenue agent had no such right under the law; that under the provisions of section 2561, Code of 1906 (section 5026, Hemingway's Code), and said section 5004, Code of 1906 (section 3286 Hemingway's Code), the attorney general or district attorney, on the advice of the insurance commissioner, alone had the right to bring it. And in order to so hold it is not necessary to trench on the decision of this court in the case of *Dukate* v. *Adams,* 101 Miss. 433, 58 So. 475, which was not an anti-trust suit growing out of the insurance business, but a suit by the state revenue agent to recover penalties for an alleged violation of our anti-trust statutes, in that it was charged that the defendants in that case had agreed and conspired together to control the trade in this state in sea food. The court held that the revenue agent had the right to bring that suit.

In order to reach a correct conclusion on this question a consideration of the main purpose and intent of our insurance statutes is necessary; and to that end it is probably well to take a brief view of the subject of insurance, its importance, and how far it is affected with a public interest.

There are many different kinds of insurance. There is fire, life, accident, employer's liability, surety, health, title

guaranty, credits, live stock, and probably other character of insurance. And their use is constantly being extended to keep pace with the advancement and development of the country. It is a well-known fact, of which the court will take judicial knowledge, that a very large proportion of the homes of the people, as well as their business houses and stocks of merchandise, are insured against loss by fire and storm, and that the number of people who have life insurance for the benefit of their families is large, and rapidly increasing; that the mills and factories and other large employers of labor insure against loss through injuries to their employees; that the banks of the state and other institutions handling large sums of money insure against the mistakes and dishonesty of their officers and employees; that official bonds of a great many of the officers of the state, counties, and municipalities, as well as the banks of the state acting under the law as state, county, and municipal depositories of public funds, are made by surety companies, the making of which is expressly allowed and encouraged by law for the better security of such funds. In fact that insurance touches and has a large part in almost every phase of the business and financial life and activity of the people of the state; that especially is this true of fire insurance, which is to a very great extent the basis of credits, for under modern business conditions, without it, the banks could not afford to advance the necessary funds to move and market the crops. In *Insurance Co.* v. *Yates*, 214 Ill. 272, 73 N. E. 423, the supreme court of Illinois well said:

"The business of insurance is the outgrowth of time and the demands and necessities of the public. It extends into and covers almost every branch of business and all the relations of life, and is applied to all the hazards of business in life where a basis of risk and compensation can be estimated. In all the stages of life, from the cradle to the grave, it asserts an interest and offers succor and aid. In the business enterprises, whether by land or sea; in the possessions of men, from a pane of glass to the mansion or the

factory; in his undertakings involving every chance, mis-
fortune, moral turpitude, or the act of God—it demands
admission and promises indemnity, reward or gain.  It
poses as the faithful and zealous trustee of his earnings and
savings, and promises to the widow and orphan a guar-
antee against misery and want. It intercedes between prin-
cipal and agent, master and servant, contractor and owner,
and insures against loss from almost any and every cause.
It is a public necessity that deals in its own credit for a
cash consideration from the assured, and is stamped with
public interest, and must yield obedience to necessary and
proper regulations by the state in the exercise of its police
power."

And in *Insurance Co.* v. *Lewis,* 233 U. S. 389, 34 Sup.
Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, the supreme
court of the United States said:

"Indeed, it may be enough to say, without stating other
effects of insurance, that a large part of the country's
wealth, subject to uncertainty of loss though fire, is pro-
tected by insurance.  This demonstrates the interest of the
public in it, and we need not dispute with the economist
that this is the result of the 'substitution of certain for
uncertain loss' or the diffusion of positive loss over a
large group of persons, as we have already said, to be cer-
tainly one of its effects.  We can see, therefore, it has come
to be considered a matter of public concern to regulate it,
and governmental insurance has its advocates and even its
examples."

It is doubted if any other branch of business, except
transportation by railroad, is as largely affected with a
public interest as that of insurance.  Confronted by these
conditions, and realizing the public necessity therefor, the
legislature established a separate and distinct department
of the state government, known as the department of in-
surance, under the control of an insurance commissioner.
The legislation on the subject will be found in chapter 125,
Hemingway's Code, and statutes enacted since the publi-
cation of Hemingway's Code.  Chapters 157, 190, Laws of

1918, and chapter 313, Laws of 1920. Chapter 125, Hemingway's Code, consists of seventy-four pages and 196 sections; and chapters 157 and 190, Laws of 1918, and chapter 313, Laws of 1920, contain eleven pages. By this legislation every character of insurance is covered, and it contains an elaborate plan of conserving the public interest in the subject. The insurance commissioner is given extensive and varied authority and supervisory powers over the affairs of the companies doing business in this state.

It should be borne in mind that our anti-trust statutes declare a most important public policy of the state, their object being to guarantee to the people freedom of trade and commerce. Section 5004, Code of 1906 (section 3286, Hemingway's Code), of the chapter on "Trusts and Combines," expressly places the enforcement of these statutes in the hands of the attorney general and the district attorneys; it provides that the penalties therein denounced are to be recovered in the name of the state, on the relation of one of those officers. It is true that section 4738, Code of 1906 (section 7056, Hemingway's Code), as held in *Dukate* v. *Adams, supra,* is broad enough to authorize the revenue agent to maintain this suit. But those statutes should be construed in connection with the object and purpose of the insurance legislation as a whole, and should also be considered along with the first section of the Code chapter on Insurance (section 2550, Code of 1906; section 5014, Hemingway's Code) as follows:

"There is hereby established in this state a separate and distinct department of insurance. which shall be charged with the execution of all laws now in force or which may be enacted hereafter, relative to all insurance, including indemnity or guarantee and other companies, corporations, associations or orders placed under this department."

And section 2561, Code of 1906 (section 5026, Hemingway's Code), provides:

"Whenever it shall appear to the commissioner from any report submitted or examination made under the provi-

sions of this chapter or otherwise, that any of said companies or orders has failed to comply with the law, or if it, its officers or agents, refuse to submit to examination or to perform any legal obligations in relation thereto, or that its condition is such as to render its further proceeding hazardous to the public or its stockholders or policy holders, it shall be the duty of the attorney general, or the district attorney under his direction, on notice by the commissioner, to institute such proceedings as are authorized by law and to prosecute the same to final judgment, and the commissioner shall also revoke or suspend all certificates of authority granted to such concern or its agents to do business in this state, as hereinafter provided."

So construed it seems plain that, so far as the enforcement of the anti-trust statutes against insurance companies is concerned, the matter is left exclusively in the hands of the attorney general and district attorneys under his direction, on the advice of the insurance commissioner; therefore the revenue agent had no authority to sue. This certainly ought to be the law. The attorney general is the chief law officer of the state. He is a constitutional officer. He ought to be able to determine for the people of the state whether the anti-trust laws have been violated. The state revenue agent is not required to be a lawyer, and the main object in establishing the office was to gather in the delinquent revenues belonging to the state and its political subdivisions, and not to enforce in the courts the great public policies of the state. Our anti-trust statutes were not intended as revenue measures; the penalties provided are merely incidental to the controlling purpose of prohibiting unlawful agreements and combinations in restraint of trade and commerce. If the revenue agent had the power to bring this suit, then he has the authority to absolutely destroy the whole plan and scheme of the insurance department, and which might come about as the result of an honest difference between himself, the attorney general, and insurance commissioner. Surely the legislature did not intend to set up the revenue agent over

and above the other departments of the state government in every instance where the public revenue is even incidentally involved, and extending to causes of this character where the courts are called upon to enforce a great public policy of the state. If he has the authority, concurrent with the chief law officer of the state and the insurance commissioner to maintain this suit, then that is his attitude.

It might be well to revert to some well-established rules of statutory construction in this connection. A construction productive of inconvenience to the community is to be rejected, unless the language does not admit of a different construction. *Eskridge* v. *McGruder,* 45 Miss. 294; *Bonds* v. *Greer,* 56 Miss. 710. Courts in construing a doubtful statute will adopt that construction which is just and equitable, and consistent with the public policy of the state, in preference to one which is contrary to that policy. *Shelton* v. *Baldwin,* 26 Miss. 439. An unjust or unwise purpose in a statute will not be imputed to the legislature when any other reasonable construction will avoid such a result. *Dunn* v. *Clinghan,* 93 Miss. 310, 47 So. 503.

It cannot be said that the insurance commissioner has nothing to do with the anti-trust statutes, for chapter 313, Laws of 1920, which amends these statutes, section 5005, Code of 1906, as amended by chapter 223, Laws of 1910 (section 3287, Hemingway's Code), expressly authorizes him to determine whether it is against the public interest for foreign fire and marine insurance companies which own stock in each other, to do business in this state; and he is given the power to refuse or revoke the license of such companies if in his judgment it would promote the public welfare to do so. Suppose under this amendment the insurance commissioner should investigate a lot of foreign fire insurance companies owning stock in each other, desiring to do business in this state, and should decide that, notwithstanding such ownership of stock, they ought to be licensed, and accordingly did so, and thereupon the revenue agent should upon investigation decide that said

insurance companies were violating section 5005, Code of 1906 (section 3287, Hemingway's Code), one of the anti-trust sections, prohibiting competing corporations from owing any interest or stock in each other. . Who would control that situation? What would the decision of the insurance commissioner amount to if the revenue agent could come along and uproot the whole plan. There can be no divided authority between these officers on such questions.

Take another illustration: Suppose in the concrete case now before the court, the insurance commissioner and the attorney general had investigated the facts and decided that the insurance companies sued were not violating the anti-trust laws, and therefore not subject to suit; and thereupon the insurance commissioner had invited them into the state and licensed them to do business, but that the revenue agent, differing with them, brought this suit; and concede that the companies had violated the law, and therefore the attorney general and insurance commissioner were mistaken in their judgment, and the revenue agent was right, and the court should so decide; still the result would be a complete overthrow of the supervisory authority and power of the insurance commissioner over the business of insurance conferred by law. And what would become of the first section of the Code chapter on Insurance, which declares:

"There is hereby established in this state a separate and distinct department of insurance, which shall be charged with the execution of all laws now in force or which may be enacted hereafter, relative to insurance," etc.?

It is hardly believable that the legislature intended to make possible such conflict of authority, and such results.

Section 2650, Code of 1906 (section 5116, Hemingway's Code), does not militate against this view; on the other hand, it is persuasive in favor of it. That section (part of the chapter on Insurance) is in this language:

"Compliance with the provisions of this chapter, as to deposits, obligations and prohibitions, and the payment of taxes, fees and penalties by and upon foreign insurance

companies, may be enforced by the commissioner by suit in the name of the state."

It will be seen that it simply provides that the insurance commissioner shall sue in the name of the state (not on any and all causes of action growing out of the insurance laws) to enforce compliance by the companies with the requirements of "this chapter," meaning, of course, the chapter on Insurance, "as to deposits, obligations and prohibitions, and the payment of taxes, fees and penalties," and by its express terms it only applies to foreign insurance companies. This section, construed in connection with section 2561, Code of 1906 (section 5026, Hemingway's Code), copied above, makes it plain that as to all other public suits against insurance companies they must be brought by the attorney general or appropriate district attorney under his direction, on the advice of the insurance commissioner; and these two sections, read in connection with section 5004, Code of 1906 (section 3286, Hemingway's Code), which provides that penalties incurred through violations of the anti-trust statutes shall be sued for in the name of the state by the attorney general or district attorney, would seem to put it beyond cavil.

It will be seen that the majority opinion refers to *Dukate* v. *Adams, supra,* as authority for holding that the revenue agent had the right to bring this suit. It has been shown above the difference in the facts of that case and this; that that was not a suit based on a violation of the anti-trust statute growing out of the insurance business. If it were necessary, in order to hold that the revenue agent had no right to bring this suit, to overrule that case, the writer would favor doing so, because in his judgment it was decided wrong. Section 5004, Code of 1906 (section 3286, Hemingway's Code), conferring the right in specific terms on the attorney general and district attorneys to enforce by appropriate suits our anti-trust statutes is a highly penal statute, and is to be strictly construed in all of its provisions. It plainly and specifically names the officers authorized to sue; while section 4738, Code of

1906 (section 7056, Hemingway's Code), which is the only authority of the revenue agent to sue, merely confers on him in general terms the power to sue for all penalties due the state, counties, municipalities, and levee boards. It is a well-known rule of statutory construction that such statutes are to be construed together, and the one dealing with the matter in specific terms will control over the one dealing with it in general terms. And, furthermore, if the reasoning hereinbefore of this dissent be sound, those are additional reasons for that construction of these statutes.

I am authorized to say that Judge Sykes joins me in this dissent.