**U. S. INDUSTRIES, INC., a corporation and Diversacon Industries, Inc., a corporation, Plaintiffs,**

**v.**

**F. Browne GREGG, Defendant.**

**Civ. A. No. 4431.**

United States District Court, D. Delaware.

Feb. 2, 1973.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiffs.

Thomas S. Lodge, and John R. Bowman, of Connolly, Bove & Lodge, Wilmington, Del., and Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., for defendant.

## OPINION

STAPLETON, District Judge:

This action was originally filed in the Court of Chancery of the State of Delaware. Plaintiff, U. S. Industries, a Delaware corporation ("USI"), immediately secured an order from that court which sequestered certain shares of USI stock owned by the defendant Gregg, a Florida resident, under Delaware's sequestration statute, 10 Del.C. § 366. Gregg, before making any response in the Court of Chancery, removed the case to this Court. In subsequent proceedings, this Court held that the sequestration was valid and that the case was properly removed under 28 U.S.C. § 1441(c). The complaint asserted both federal and state claims. The holding on the removal question, however, was based upon a finding that plaintiff had alleged "a separate and independent claim" which "would have been removable if sued upon alone" because of diversity of citi-

zenship and the presence of the requisite jurisdictional amount. See U. S. Industries v. Gregg, 348 F.Supp. 1004 (D. Del.1972).

■■■ Before the time for defendant's answer, he moved for leave to enter a "limited" or "restricted" appearance, claiming the right to defend plaintiff's claims on the merits without subjecting himself to the *in personam* jurisdiction of the court and thus the right to limit the satisfaction of any judgment obtained by the plaintiff to the sequestered property itself. This motion is now before the Court for decision.[1]

Under the Delaware rule, as announced in Sands v. Lefcourt Realty Corp.,[2] Gregg would concededly be denied the permission he seeks. He asserts, however, that federal law controls the point and that, in any event, application of the Delaware rule would violate his right to due process of law under the Fourteenth Amendment to the United States Constitution. In this context, a number of questions are presented: (1) whether any federal statute or any of the Federal Rules of Civil Procedure decides the point either by way of declaring, expressly or by necessary implication, a federal rule or by incorporating the state rule, (2) if not, whether this Court should apply federal or state law,

(3) if federal law is to be applied, what is the federal rule and (4) if Gregg's choice is limited to one between default and general appearance, will he be deprived of due process?

## I. THE FEDERAL STATUTES AND RULES.

Due process questions aside, this is an area in which Congress by statute, or the Supreme Court by rule, could, consistent with Erie v. Tompkins[3] and the Constitution, establish a controlling rule for decision.[4] Neither, however, has chosen to do so.

Section 1450 of Title 28 provides in part:

Whenever any action is removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant in such action in the State court shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court.

USI urges that this statute incorporates Section 366 of Title 10 of the Delaware Code which, as the court in the *Sands* case found, was drafted with the idea that limited appearances would not

1. Plaintiff, relying on F.R.Civ.P. 12(g), maintains that Gregg waived any right he may have had to the relief here sought by failing to request that relief in conjunction with his attack upon the sequestration. I conclude, however, that Rule 12(g) is inapplicable. While the motion is in a sense similar to a "defense of lack of jurisdiction over the person," at the time of the attack on the sequestration the plaintiff was not claiming, and the court clearly did not have, jurisdiction over defendant's person and there was no need to challenge jurisdiction which had not been asserted. While it would have perhaps been better practice to have joined the current request as one for alternative relief, this motion nevertheless raises substantial and important issues from the defendant's point of view in a largely uncharted area, and I conclude

that disposition on grounds of waiver would not be in the interest of justice. Defendant's form of motion has been used in other circumstances to raise similar issues. E. g. Grant v. Kellogg Co., 3 F.R.D. 229 (S.D.N.Y.1943) ; Sands v. Lefcourt Realty Corp., 35 Del.Ch. 340, 117 A.2d 365 (Sup.Ct.1955).

2. 35 Del.Ch. 340, 117 A.2d 365 (Sup.Ct. 1955).

3. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. Hanna v. Plumer, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) (holding that such power exists "to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.")

be available. The purpose of Section 1450, however, is to give a state attachment the same effect in a federal court after removal as it would have had in the state court; it incorporates state law to this extent.[5] I find no suggestion in the text of the statute, however, that it was intended to refer a federal court to state law for a determination of when the federal court obtains *in personam* jurisdiction and when it does not.[6]

Federal Rule 81(c) provides that the Federal Rules of Civil Procedure shall apply to removed actions and shall "govern procedure after approval." No other federal rule, however, can be said to govern the question before this Court either expressly or by necessary implication. Rule 4(e) as amended in 1963, permits the institution of actions in a federal court by attachment and provides that "service shall be made . . . under the circumstances and in the manner prescribed in . . . [a state] statute or rule." Its scope is thus limited to service of process and does

not extend further.[7] The "legislative" history so indicate.[8]

Rule 12 in describing the responses to a complaint does not, it is true, refer to the possibility of a "limited appearance." This has helped one court to the conclusion that the rule excludes this alternative.[9] Moreover, Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims, by contrast, expressly provides for limited appearances in the cases which it governs. But the temptation to draw a negative inference from the omission of a reference to limited appearances in Rule 12 should be resisted in light of the relevant advisory committee comments. The comments relating to Rule 12 do not indicate that any judgment was made on the issue.[10] The comment in connection with the 1963 amendments to Rule 4 likewise contained no mention of the problem.[11] The 1963 amendment to Rule 13 and the 1965 adoption of admiralty rule E(8), however, produced affirmative evidence that the committee intended to "leave the matter open." [12] The

---

5. 1A Moore, Federal Practice, ¶ 0.168 [4–5].

6. This reading does not produce the procedural quagmire and jurisdictional dilemma which plaintiff predicts. Section 366 does require the Court of Chancery to release the seized property upon the entry of a "general appearance, absent a showing that release will make it 'substantially less likely that plaintiff will obtain satisfaction of any judgment secured.'" It does not follow, however, that this Court, in obeying the command of Section 1450 to hold the property under Section 366, would be required to act similarly upon the entry of a limited appearance and thereby lose its sole basis for jurisdiction.

7. *Cf.* Arrowsmith v. United Press International, 320 F.2d 219, 224 (2nd Cir. 1963).

8. See notes 10 and 11, *infra*; Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963, 77 Harv.L.Rev. 601, 627–28 (1964). Prof. Carrington

has taken the position that since the "whole thrust of the [proposed] Rule 4 (a) amendment is a reference to state law it may be presumed that the Committee would contemplate . . . use [of the limited appearance only] in states in which it is permitted in local courts." Carrington, The Modern Utility of Quasi in Rem Jurisdiction, 76 Harv.L.Rev. 303, 314 (1962). The Comments seem to indicate that the Committee did not so contemplate, however.

9. Grant v. Kellogg Co., 3 F.R.D. 229 (S.D.N.Y.1943).

10. Notes of the Advisory Committee, 28 U.S.C. Rule 12 (1972 Supp.).

11. Notes of Advisory Committee, 28 U.S.C. Rule 4 (1972 Supp.).

12. Note, "The 'Right' to Defend Federal Quasi in Rem Actions Without Submitting to the Jurisdiction of the Court," 48 Iowa L.Rev. 441, 442 n. 8 (1963); Notes of Advisory Committee, Admiralty & Maritime Rule E (Appendix to 28 U.S.C.A.).

consensus has, accordingly, been that the Federal Rules of Civil Procedure do not speak to the question now before this Court.[13]

## II. WHETHER STATE OR FEDERAL LAW GOVERNS

Upon analysis, this second question presents two separate issues. While this Court's jurisdiction in this case is founded solely on the presence of a separate and independent diversity claim, plaintiff asserts a claim having its source in federal law[14] as well as claims grounded upon state law, and it is the source of a claim, rather than the basis of federal jurisdiction, which is relevant in determining the law applicable to that claim. As the court observed in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n. 1 (2nd Cir. 1956):

> . . . despite repeated statements implying the contrary, it is the *source* of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law. . . . Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law. See, e. g., Rotherberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 21 A.L.R.2d

832. *Cf.* Wichita Royalty Co. v. City National Bank, 1939, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515.

The converse is also true; where a diversity case includes a federal claim, the source of that claim is the relevant factor.[15]

This Court must, accordingly, consider Gregg's rights with respect to the federal claim as well as with respect to his state claims. While these choices of law involve analyses which are similar in some respects, the controlling principles and precedents are different.

### A. *The State Claims.*

Under Erie v. Tompkins[16] and its progeny[17] three questions are now relevant in determining whether state law or federal law will govern a question arising in connection with the assertion of a state created right: (1) whether the state rule is "bound up with . . . [state created] rights and obligations in such a way that its application in the federal court is required,"[18] (2) if not, would failure to follow the state rule be "outcome determinative"— that is, would it so materially affect the character or result of the litigation as to cause forum shopping or inequitable administration of the laws, and (3) even if failure to follow the state rule might produce either of these undesirable con-

13. 2A Moore, Federal Practice, ¶ 12.13 p. 2333; 4 Wright & Miller, Fed.Prac. § 1123, p. 514. The situation here is different from that which confronted the court in Neifeld v. Steinberg, 438 F.2d 423 (3rd Cir. 1971). There the court held that the joinder of a permissive counterclaim with a defense of lack of jurisdiction over the person did not waive the latter defense where the defendant had withdrawn the counterclaim without leave of court. Rule 12, while not expressly reading on the relevant question, was found to embody a scheme regarding responsive pleading and waiver which was inconsistent with the view that a waiver had occurred.

14. Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) (1971).

Section 22(a) of that act would preclude removal if this claim were the only one asserted. USI v. Gregg, 348 F.Supp. 1004 (D.Del.1972).

15. 1A Moore, Federal Practice, § 0.305 [3] p. 3054.

16. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

17. E. g. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

18. Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 535, 78 S.Ct. 893, 899, 2 L.Ed.2d 953 (1958).

sequences, is there, nevertheless, a countervailing "strong federal policy" [19] which requires the application of federal law.[20] If the state rule is closely "bound up" with the state created claim, state law must be applied. Even if the state rule is one of "form and mode," however, state law must be applied, in the absence of a strong countervailing federal policy, where the choice of federal law would lead to either of the aforementioned "twin evils" denounced in *Erie*.[21]

■ To state the relevant inquiries in this fashion does not, of course, close debate. There is no "automatic 'litmus paper' criterion." [22] It does, however, provide the guidelines for decision.

The rule of Sands v. Lefcourt Realty Corp. is not intimately bound up with the state rights which plaintiff here seeks to enforce. The policy behind the rule, namely to require that any adjudication on the merits of a claim permanently settle the rights of the parties

with respect to that claim,[23] "reflects essentially institutional considerations relevant to the administration of justice" within the Delaware court system and is "unrelated to the basic rights and obligations of the parties." [24]

In a state which permits "limited appearances," [25] the presence of a contrary rule in the federal courts of that state would obviously be an important factor in the plaintiff's choice of forum.[26] Similarly, where a state, like Delaware, does not permit limited appearances,[27] application of a contrary rule in the federal court would undoubtedly affect the nonresident defendant's election under the removal statute. 28 U.S.C. § 1441. While the choice would here be made in a different context from that before the court in *Erie*, the effect would be the same—the granting to a non-resident of a choice of law affecting the character and result of the litigation for reasons wholly unrelated to the purpose of diversity jurisdiction.

19. *Id.* at 536, 78 S.Ct. 893.

20. The Third Circuit Court of Appeals has read *Erie* and its progeny to indicate that these are the relevant questions. Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177 (3rd Cir. 1972). See also Neifield v. Steinberg, 438 F.2d 423 (3rd Cir. 1971) ; Atkins v. Schmutz Manufacturing Co., 435 F.2d 527 (4th Cir. 1970).

21. Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

22. *Id.* at 460, 85 S.Ct. 1136.

23. A quasi-in-rem judgment does not have a *res judicata* effect on a subsequent action on the same claim, and collateral estoppel does not apply even as to issues actually litigated as long as the judgment is against the property and not the person. Restatement of Judgments § 76 (1942) ; 4 Wright & Miller, Fed. Prac & Proc. § 1070 (1969).

24. Atkins v. Schmutz Manufacturing Co., 435 F.2d 527, 537 (4th Cir. 1970). The *Sands* rule would be applied by the Delaware courts in cases of this kind to rights created by the laws of another state. Here, for example, Florida law

appears to be the source of at least some of the claims which plaintiff seeks to enforce. The fact that Delaware classifies the right as "procedural" for this purpose, does not, of course, require this Court to so characterize it for present purposes. Sampson v. Channell, 110 F. 2d 754 (1st Cir. 1940).

25. E. g., Maryland: Miller Brothers Co. v. State, 201 Md. 535, 95 A.2d 286 (1953) ; Massachusetts: Cheshire National Bank v. Jaynes, 224 Mass. 14, 112 N.E. 500 (1916) ; Oklahoma: Osborn v. White Eagle Oil Co., 355 P.2d 1041 (Okl.1960).

26. B. Currie, Attachment and Garnishment in the Federal Courts, 59 Mich.L. Rev. 337 (1961) ; 4 Wright & Miller, Federal Prac. & Proc. § 1123 at 514–515. While the potential discrimination here would be against a non-resident rather than a resident as in *Erie*, the policy of that case may still apply. Note, 15 Corn. L.Q. 560, 563 (1963).

27. E. g. Oregon: State ex rel. Methodist Old People's Home v. Crawford, 159 Or. 377, 80 P.2d 873 (1938) ; Rhode Island: Industrial Trust Co. v. Rabinowitz, 65 R.I. 20, 13 A.2d 259 (1940).

■ Since the choice of law on the question before this Court would be "outcome determinative" as that phrase has been construed by the Supreme Court,[28] state law must be applied unless there is a countervailing "strong federal policy." Whether such a policy exists is a question which I believe the federal courts should approach with restraint. If a federal rule exists or can be formulated, a federal policy, in a sense, will be present by definition. A federal rule of limited appearance could be said to rest upon a federal policy against the dilemma in which a general appearance rule places the defendant. A federal rule of general appearance could be said to rest on a federal policy against re-litigation of issues. The "strong federal policy" exception, however, should be limited to cases where the federal policy is clearly established by the federal constitution or a federal statute and where application of the state rule would "alter the essential character of function of a federal court."[29] An extension of the exception beyond such cases would lead to a return to the philosophy of the Swift v. Tyson era and, under the theoretical guise of protecting an interest in uniformity among the federal courts, create, in fact, as many different "federal rules" as there are views on what constitutes "strong federal policy."[30]

■ In this instance, I find no clearly defined, federal policy relating to the essential character of the federal judicial system. As hereinafter indicated, the Constitution neither dictates nor clearly embodies a policy supporting, one rule or the other. The same is true of the federal statutory law. The sparse federal case law is in conflict.[31] Moreover, application of one rule or the other will not disrupt or alter the essential character of the federal proceeding. If the defendant defends on the merits, the issues will be litigated and decided in precisely the same manner whether the appearance is general or limited. If the defendant fails to appear, the case will also proceed in precisely the same manner. In short, there is an "absence of any established federal principle or discernible federal policy on the point."[32]

Accordingly, this Court considers itself bound to apply the rule of Sands v. Lefcourt Realty Corp. to plaintiff's state court claims.

### B. The Federal Claim.

■ The Supreme Court of the United States has stated on a number of occasions that the doctrine of Erie v. Tompkins is inapplicable where a federally created right is involved.[33] The meaning and ramifications of these statements have not been fully articulated by that court, however, and are subjects about which there has been considerable academic comment.[34] Some con-

---

28. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

29. Byrd v. Blue Ridge Rural Electric Co-operative, 356 U.S. 525, 539, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958).

30. See Note, "State Statutes of Limitations in Federal Courts: By Whom the Statute Tolled," 1971 Duke L.J. 785, 790–799, 801–803. While Supreme Court review would establish "uniformity" conflict in the lower court "policy calls" would by no means assure Supreme Court review. See Stern, Denial of Certiorari Despite a Conflict, 66 Harv.L.Rev. 465 (1953).

31. See review of cases in 2A Moore, Federal Practice ¶ 12.13 pp. 2330–2334.

32. 4 Wright & Miller, Fed.Prac. & Proc. § 1123 p. 515.

33. Board of Commissioners v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939); Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694 (1940); D'Oench, Duhme & Co. v. F.D.I.C., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (Jackson, J., concurring); Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953).

34. See e. g., Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv.L.Rev. 66 (1955); Mishkin, The Variousness of "Federal Law:" Competence and Discretion in the Choice of National and State Rules for Decision,

clusions may nevertheless be drawn from the cases in this area. Legitimate state interests, where they exist, may not be ignored in making the choice of law even where a federal claim is at issue.[35] In a few instances state rules have been applied even as to matters which would be "procedural" in traditional conflicts terminology.[36] In cases where the matter is one of procedure in that sense, however, rarely will there be a significant state interest in having a state rule applied to the enforcement of a federal claim even though it be "outcome determinative" in *Erie* terms.[37] Ordinarily, such state rules are applied only when circumstances are such that Congress may fairly be said to have intended their adoption.[38] Even where state interests exist, however, they must yield to any federal interest discernible from the federal legislation giving rise to the claim,[39] from considerations involving executive administration of the federal law [40] or from the character of the federal judicial system.[41]

▮▮▮ Accordingly, while the guidelines of *Erie* and its progeny are not applicable to the resolution of choice of law problems in a federal claim context, the choice in that context nevertheless also involves a process of ascertaining any relevant state and federal interests. Here the problem is not difficult of resolution because I perceive no Delaware interest in whether this Court applies a limited or general appearance rule in a case being litigated in this Court to enforce a right created by the Securities Act of 1933.

I conclude, accordingly, that this Court is not required to apply the Delaware appearance rule to USI's federal claim. This leaves the Court with the task of choosing one of three alternatives based on what it is able to infer from the federal statutory, regulatory, rule and case law: (1) a general appearance rule, (2) a limited appearance rule, or (3) a rule of adoption of state law.

### III. THE APPROPRIATE FEDERAL RULE.

It is unnecessary in this case to formulate a federal rule applicable to all

105 U. of Pa.L.Rev. 797 (1957); Note, Rules of Decision in Nondiversity Suits, 69 Yale L.J. 1428 (1960); Note, The Competence of Federal Courts to Formulate Rules of Decision, 77 Harv.L.Rev. 1084 (1964).

35. E. g. United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). Whether this is dictated by the Rules of Decisions Act, 28 U.S.C. § 1652, or is discerned from the principles underlying our federal system has not been authoritatively determined. See Mishkin, *supra*, note 34; Hill, *supra*, note 34.

36. Camden & Suburban Ry Co. v. Stetson, 177 U.S. 172, 20 S.Ct. 617, 44 L.Ed. 721 (1900) (applying state rule permitting physical examination of a plaintiff); Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895) (applying state limitations statute); Hill, *supra*, note 34.

37. Hill, *supra*, note 34 at 91–94. Where a procedural rule is "outcome determinative" it may be held that it conflicts with

the federal statute which created the right and, for that reason, must not be applied even if a state court proceeding. E. g. Brown v. Western Ry., 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100 (1949); Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952).

38. E. g. Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1900); Chattanooga Foundry and Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961).

39. D'Oench, Duhme & Co. v. F.D.I.C., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

40. United States v. Hext, 444 F.2d 804 (5th Cir. 1971); United States v. Sommerville, 324 F.2d 712 (3rd Cir. 1963).

41. Monarch Insurance Co. v. Spach, 281 F.2d 401 (5th Cir. 1961); Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir. 1961).

cases under the Securities Act of 1933 which are litigated in a federal court.[42] This case arises under rather unusual circumstances and a choice for the present case is sufficient.

■ Section 22(a)[43] of the Securities Act provides for concurrent state-federal jurisdiction over actions arising under the Act. Moreover, that section expressly prohibits removal of Securities Act claim brought in a state court. It is clear that out of solicitude for Securities Act claimants Congress intended one asserting a claim solely under the Act to be entitled to have his claim litigated in a state court. Delaware practice provides for *in personam* jurisdiction over the defendant if he appears to defend on the merits. Presumably, Congress contemplated that such a Securities Act plaintiff in Delaware would have the benefit of this rule.[44]

■ In this case USI joined its Securities Act claim with a "separate and independent" state claim. In its earlier opinion this Court noted the conflict between the policy behind the non-removal provisions of Section 22(a) and the twin policies of Section 1441(c): (1) to assure that a defendant entitled to a federal forum for litigation of a diversity claim or removable federal claim will not be deprived of that right by his adversary's joinder of a non-removable, separate and independent claim and (2) at the same time, to insure that all claims which should be litigated together for reasons of judicial economy be litigated in the same forum. Based on the text of Section 1441, this Court concluded that the policy of Section 22(a) must yield to those of Section 1441(c). The policies

of Section 1441(c) do not, however, require that a suit which would be an *in personam* one in the forum of the plaintiff's choosing must become something entirely different if the suit is removed. Those policies can be effectuated without applying a limited appearance rule.

If USI were asserting solely a Securities Act claim it would be entitled, after litigating its claim on the merits in Delaware, to receive an *in personam* judgment pursuant to Delaware's general appearance rule. It would be anomalous, indeed, to deprive USI of this result merely because it also presses a "separate and independent" state law claim as to which, as I have held above, USI has a right to the application of the state rule.

In short, I conclude that a federal district court in a case of this character should apply the state rule of general appearance by adoption.

## IV. THE CONSTITUTIONALITY OF THE RULE OF SANDS v. LEFCOURT REALTY CORP.

■ Gregg correctly asserts that under the Due Process Clause of the Fourteenth Amendment he has a right to defend the property which has been seized. He concedes that a general appearance rule would not deprive him of an opportunity to defend but asserts that it would unconstitutionally condition his right to defend on the merits by requiring that he first submit himself to the *in personam* jurisdiction of the Court.

■ Not all conditions on the exercise of a Fourteenth Amendment right are constitutionally prohibited. Rule 13

---

42. The present problem will arise rarely in a Securities Act case instituted originally in a federal court since the Act authorizes personal service outside the forum district in such case in any district where the defendant can be found. 15 U.S.C.A. § 77v.

43. 15 U.S.C.A. § 77v.

44. Nothing in the Securities Act would provide a basis for a claim that Delaware

would be required to apply federal law on this point, and in the absence of some such basis in the federal law, a state court is free to follow its own rules in a concurrent jurisdiction case. Brown v. Western Ry., 338 U.S. 294, 70 S.Ct. 105, 94 L. Ed. 100 (1949) ; Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L. Ed. 398 (1952).

and state compulsory counterclaim rules, for example, provide that a defendant, if he wishes to defend a plaintiff's claim, must pay a price for being permitted to do so—he must submit any claim he may have arising out of the same transaction for disposition by the Court or lose that claim.

The question, accordingly, is not whether Gregg's constitutional right to defend has been conditioned, but rather whether it has been unreasonably conditioned.[45] What is reasonable or unreasonable in this context can only be answered with reference to the public interest involved in requiring a general appearance and the burden which such a rule places upon the defendant.

There is, in my judgment, a legitimate public interest behind the general appearance rule. If a state or federal court is required by a defendant's response to a complaint to try and determine all of the issues upon which an *in personam* claim turns, there is a public interest in having that expenditure of judicial resources settle the rights of the parties with respect to that claim and in not leaving open the possibility of subsequent, duplicative litigation in the same court or another.[46] This interest is similar to, though stronger, than,[47] the one reflected in compulsory counterclaim rules.

One must still ask, however, whether the price which a general appearance rule extracts from a defendant is excessive despite the countervailing public interest. Gregg suggests that it is because the forum, by definition, is one with which his only contact is the presence of his property within its jurisdic-

---

45. *Cf.* York v. Texas, 137 U.S. 15, 20, 11 S.Ct. 9, 10, 34 L.Ed. 604 (1890) (upholding the constitutionality of a Texas statute under which an appearance solely to attach service of process and jurisdiction over the person constituted a general appearance, thereby, in effect, requiring a non-resident to choose between entering a general appearance or losing his right to defend a claim on its merits in the event the service is found to be sufficient) :

> The State has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties and litigants.

Adam v. Saenger, 303 U.S. 59, 67–68, 58 S.Ct. 454, 458, 82 L.Ed. 649 (1938) (holding that a state may condition a non-resident plaintiff's right to litigate in its courts by requiring that he submit himself to the *in personam* jurisdiction of its courts for the litigation of unrelated claims against him without personal service of process on him) :

> . . . The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condi-

tion of opening its courts to the plaintiff. Frank L. Young Co. v. McNeal-Edwards Co., 283 U.S. 398, 400, 51 S. Ct. 538, 539, 75 L.Ed. 1140 ; cf. Chicago & N. W. Ry. Co. v. Lindell, 281 U.S. 14, 17, 50 S.Ct. 200, 201, 74 L.Ed. 670.

McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).

46. Note, The "Right" to Defend Federal Quasi in Rem Actions Without Submitting to the Personal Jurisdiction of the Court, 48 Iowa L.Rev. 441 (1963) ; Moore, Federal Practice, ¶ 12.13 n. 16 ; 4 Wright & Miller, *supra*, § 1123 at 514.

47. In a compulsory counterclaim context, the court, in the absence of a compulsory counterclaim rule, would not ordinarily be required to try and determine all of the issues upon which the counterclaim rests. The potential for waste of judicial resources, while present, is accordingly, not as great. For this reason, the 1963 amendment to Rule 13(a) (i. e. permitting a defendant brought into court under Rule 4(e) to withhold a compulsory counterclaim) is not relevant to any question here posed. It is one thing to conclude that it is fair to permit a defendant to withhold a separate claim from adjudication and quite another to conclude that fairness to a defendant requires that he be allowed two days in court on the same claim.

tion. Requiring him to litigate in such a forum, he says, imposes an unconscionable burden. This Court has already held, however, that the acquisition of quasi-in-rem jurisdiction by sequestration is constitutional.[48] Given the right of a court to require that a defendant whose property is seized defend on the merits or default, it is difficult to see what additional litigation burden a general appearance rule imposes upon a defendant. If he defaults recovery will be limited to the property seized. If he defends on the merits the trouble and expense of litigation will be no different whether a general or limited appearance rule is applied.[49]

Also unpersuasive is Gregg's argument that a general appearance rule gives a plaintiff an unfair advantage by allowing him to bring suit on a large claim in a jurisdiction where the original basis for jurisdiction is the presence of property having a comparatively small value. Any such unfairness does not rise to constitutional proportions. A similar phenomenon frequently occurs under compulsory counterclaim rules.

 Put in Gregg's "contact" terminology, if he defends upon the merits he has created an additional relationship with the forum jurisdiction; he is present in the forum court to litigate the factual and legal issues upon which a claim turns. This is sufficient contact to permit the court to adjudicate that very claim once and for all.[50] The scant judicial authority on the question supports this conclusion.[51] The Restatement of Judgments and Professors

---

48. USI v. Gregg, 348 F.Supp. 1004 (D.Del. 1972).

49. As one commentator has observed, the arguments of inconvenience are more properly addressed to the question of whether quasi-in-rem jurisdiction should be permitted rather than to the question of choosing between a general and limited appearance rule. Note, 48 Iowa L.Rev. 441, 448 (1963). It is, of course, true that a general appearance rule will require the defendant to put more "at risk" in the forum jurisdiction if he wishes to litigate on the merits. This, however, is not a burden, in any realistic sense, except insofar as it relates to considerations of litigation convenience. The question is not one of "risk" but one of where and when the parties' rights will be determined. Defendant is "at risk" to the full extent of plaintiff's claim wherever he may be found. A general appearance rule deprives the defendant only of the opportunity to litigate twice, once in the forum state and once later in a jurisdiction where he may be served.

50. Where the claim sought to be adjudicated is sufficiently related to a single act of the defendant either within the forum state or causing an effect there, that isolated act will support in personam jurisdiction under the "minimum contacts" theory even though there has been no personal service within the jurisdiction. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223

(1957); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969); Bean v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971). Cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). While the "relationship" under these contacts theory cases is of a different sort than the relationship created by defendant's defense on the merits, the rationale underlying the contacts theory is nevertheless applicable. The relevant question is whether balancing the state interests sought to be protected against the burden placed upon the defendant, it "offends traditional notions of fair play and substantial justice", International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), to require a defendant to litigate a claim in the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

51. United States v. Balanovski, 236 F.2d 298 (2nd Cir. 1956) (per Clark, C. J.); Grant v. Kellogg Co., 3 F.R.D. 229 (S.D. N.Y.1943); Bede Steam Shipping Co. v. New York Trust Co., 54 F.2d 658 (S.D. N.Y.1931); Campbell v. Murdock, 90 F. Supp. 297 (N.D.Ohio 1950). Dewey v. Des Moines, 173 U.S. 193, 19 S.Ct. 379, 43 L.Ed. 665 (1899), relied upon most heavily by defendant, is not in point. That case dealt with jurisdiction to litigate. While the court did there treat an assessment on real property as being "in the nature of a judgment," this aspect of the case does not support defendant's posi-

Moore and Blume have reached similar conclusions.[52]

In short, weighing the public interest and the burden imposed upon the defendant, I conclude that a general appearance requirement does not violate due process.

The rule of Sands v. Lefcourt Realty Corp. is constitutional. It will be applied with respect to all claims in this action. While the defendant may file a limited appearance if he deems it necessary to preserve any appellate rights he may have, in that event any judgment awarded to plaintiff will, nevertheless, be an *in personam* one.

See also D.C., 58 F.R.D. 485.

tion here. The assessment purported to impose personal liability upon a non-resident landowner. At the time of the assessment the non-resident had not been notified and his only contact with the state was his ownership of property. The court declared the personal liability portion of the assessment to be unconstitutional. This holding would be relevant in this case only if Gregg defaulted and this

Court purported to enter an *in personam* judgment.

52. Restatement of Judgments § 40 Comment (a) (1942); 2A Moore, Federal Practice ¶ 12.13 n. 16 (1972); Blume, Actions Quasi in Rem Under Section 1655, Title 28 U.S.C., 50 Mich.L.Rev. 1 (1951). But see, Developments in the Law—Jurisdiction, 73 Harv.L.Rev. 909, 953 (1960).