Lynda **WILLIAMS** and Mrs. Erma Williams, Plaintiffs,

v.

**CESSNA AIRCRAFT CORPORATION** and Teledyne Industries, Inc., Defendants.

No. DC 72–76–S.

United States District Court, N. D. Mississippi, Delta Division.

April 24, 1974.

Charles L. Sullivan and Walter W. Thompson of Sullivan, Smith & Hunt, Clarksdale, Miss., for plaintiffs.

William E. Suddath, Jr., of Watkins & Eager, Cary E. Bufkin, of Satterfield, Shell, Williams & Buford, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This diversity action involves, in part, the so-called "second accident" doctrine of Mississippi products liability law. The action is now before the court upon motion of the defendant, Cessna Aircraft Corporation (Cessna), for partial summary judgment. Plaintiffs are the wife and daughter of the decedent, Marion A. Williams (Williams). They seek to recover damages for his death pursuant to the provisions of the Mississippi Wrongful Death Act.[1]

Williams was killed in an airplane crash. At the time of his death, Wil-

---

1. Section 11–7–13, Miss.Code Ann. (1972). The application of the wrongful death act in products liability suits is not questioned.

See, (Coleman) v. Ford Motor Co., 240 So. 2d 607 (Miss.1970).

liams was the pilot of a Cessna 188 "Agwagon", a fixed-wing craft utilized for agricultural purposes. Plaintiffs originally alleged the fatal crash was the result of negligent design and defective construction. Specifically, they alleged the engine burst into flames while the plane was in flight. Subsequently, in an amended pleading which added another party defendant, plaintiffs apparently elected to shift their primary reliance, with respect to the defective engine, to the theory of strict liability in tort. They charged, inter alia, the engine contained latent defects which rendered it unfit for ordinary usage.

Before a responsive pleading was filed, plaintiffs filed an initial amendment and set forth additional grounds. They alleged the pilot's seat collapsed upon impact and the restraining or safety harness separated, allowing Williams to be thrown violently forward into the instrument panel. Plaintiffs do not specifically allege Williams could have survived the crash but for the failure of the seat and restraining harness. Rather, they allege this was only one of a series of factors which proximately caused or contributed to his death; all factors being ultimately attributed to the defendants. Recovery is sought jointly and severally against Cessna and Teledyne Industries (Teledyne), the manufacturer of the allegedly defective aircraft engine. Teledyne, of course, has not joined the present motion which is directed only to the allegations concerning the failure of the seat and harness.

No form of proof was submitted with the motion. Moreover, Cessna did not deny in its answer that the seat collapsed and the harness separated. However, contending as a matter of Mississippi law it cannot be held liable for the failure of the seat and harness—the so-called "second accident", Cessna seeks to eliminate the amendment.

Although designated a motion for partial summary judgment, the court is of the opinion the motion should properly be considered as a Rule 12(c) motion for judgment on the pleadings. No evidentiary matters outside the pleadings have been presented to or considered by the court. The essential factual elements, i. e., the failure of the seat and harness, are not in dispute, and the court is not required to make a factual determination. The issue under Mississippi law concerns the legal effect of the pleadings which are closed as between the relevant parties. The motion, moreover, was filed within such time as not to delay the trial.

The "second accident" doctrine apparently grew out of a series of suits involving automobile collisions. Generally, the injured party sued the driver of the other vehicle and also the manufacturer of his own vehicle. As against the manufacturer of his own vehicle, the plaintiff typically claimed his injuries were enhanced or aggravated by alleged defects inherent in the vehicle; viz, his injuries would have been less severe but for negligent design or construction. The leading cases are Evans v. General Motors [2] in which the action was dismissed for failure to state a claim, and Larsen v. General Motors [3] in which the court held that the complaint did state a claim for relief against the manufacturer. The ultimate legal and policy questions behind *Larsen* and *Evans* were recently posed by a distinguished scholar:

"In designing an automobile, does a manufacturer need to anticipate that it may be involved in a collision and to prepare that design to alleviate the effects of the collision? One line of authority holds that it does not, that a collision is not an intended use of the automobile and that there is no requirement that the car be 'accident proof or fool proof'. The other line of

2. 359 F.2d 822 (7th Cir. 1966). See also, Schemel v. General Motors, 384 F.2d 802 (7th Cir. 1967).

3. 391 F.2d 495 (8th Cir. 1968).

authority declares that automobile collisions are to be anticipated and that a manufacturer must take this into consideration in planning his design. The second position seems clearly correct. But it should be borne in mind that the requirement is not that the car be completely accident proof or crash worthy; that would be an impossible task. Instead, the requirement is that the design provide due safety, taking into consideration the possibility of a crash." [4]

Irrespective of which position is "clearly correct", this court is required to apply existing Mississippi precedent. The defendant-movant cites three recent Mississippi cases in support of the motion.

Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss.1969) involved a rear-end automobile collision. The injured plaintiff sued, among others, the manufacturer of his own automobile. The proof showed the other driver negligently drove into the rear of plaintiff's vehicle. The force of the collision sheared a screw or bolt which held the driver's seat upright.

The seat collapsed backward so that the plaintiff was propelled into a prone position and was then flung forward into the steering wheel. He suffered serious injuries as a result. As a case of first impression, the court noted it was confronted with a choice of paths and opted for the rationale of Evans, supra.

The court defined the issue in Walton as "whether or not this court will extend the strict liability rule to include a case where the defect in the article sold did not cause the initial accident but did, when combined with the force put in motion by the accident, add to, or become a part of the cause of injury to a human being, so as to subject (the) manufacturer to liability." 229 So.2d at 570. The court resolved the issue in this manner:

"[T]he alleged defect in the automobile did not cause the accident . . . however . . . the weakness of the bumper and screw did, or could have, added to the seriousness of the plaintiff's injury. . . .

We are of the opinion that the automobile manufacturer is not an insurer against the possiblity of accidental injury arising out of the use . of its product. . . . The manufacturer is liable for defects in its product which cause injury arising out of the intended use for which the product is manufactured . . . an automobile manufacturer is not liable for injury arising from defects in the automobile which did not cause or contribute to the cause of the accident. . . .' 229 So.2d 570, 572.

The same result was reached in Ford Motor Co. v. Simpson, 233 So.2d 797 (Miss.1970). Plaintiff was a passenger in a Ford vehicle which was involved in an accident. She was thrown forward by the force of the collision and her knee struck the heater, located under the dashboard. Plaintiff contended the injury was caused by negligent design. She did not contend the actual automobile accident was in any way caused by the claimed defect. Plaintiff's theory was rejected on the authority of Walton, supra.

An unusual products liability suit followed Walton and Simpson. In General Motors Corp. v. Howard, 244 So.2d 726 (Miss.1971), the plaintiff was operating a vehicle manufactured by the defendant when he was struck by a heavily-laden transport truck. The truck collided with the side of plaintiff's vehicle at a severe angle. As a result, plaintiff was thrown against his own steering wheel. The manufacturer had advertised that the vehicle was equipped with a telescoping wheel and steering column. Although the column did bend, it did not telescope

---

4. Wade, On the Nature of Strict Tort Liability For Products, 44 Misc.L.J. 825, 847–48 (1973).

and the plaintiff was seriously injured as a result of striking the wheel.

The theory of the plaintiff's case was breach of warranty. Nevertheless, the court applied as controlling the standard announced in *Walton* and entered judgment for the manufacturer. It is significant that the alleged defect involved an advertised safety feature. As a factual resolution, the court determined (1) the manufacturer never asserted the column would telescope under any and all conditions, and (2) the column would have functioned as advertised had a head-on collision occurred.

Despite these factual determinations, this opinion seemingly clouds the court's prior statement in *Walton* that, "the manufacturer is liable for defects in its product which cause injury arising out of the *intended* use for which the product is manufactured. . . ." (emphasis supplied). 229 So.2d 572. Without citing General Motors Corp. v. Howard, the United States Court of Appeals for the Fifth Circuit recently noted, "[w]e intimate no opinion whatsoever as to the outcome of a case, governed by Mississippi law or otherwise, in which a safety device actually in use fails to function because of a defect." Landrum v. Massey-Ferguson, Inc., 473 F.2d 543, n.2 (5th Cir. 1973); cf. Ford Motor Co. v. Matthews, 291 So.2d 169 (Miss.1974).

The trio of *Walton, Simpson* and *Howard* has been severely criticized. "Few legal decisions rest upon such shaky logic as do the so-called 'second accident' case in which Mississippi and a majority of jurisdictions refuse to impose liability upon the manufacturer for a quality or condition of the automobile which does not contribute to the initial impact with another vehicle or object but which merely aggravates the injuries sustained by the occupant of the automobile."[5] Sitting as a Mississippi trial forum, our task, however, is not to criticize or ignore precedent, but to follow it where the facts warrant. After a careful review of the pleadings and memoranda, the court has concluded the motion must be sustained.

■ Viewing plaintiffs' allegations as true for the purposes of the motion,[6] they require that, under Mississippi law, the "initial accident" be defined as the crash of the aircraft rather than the failure of the seat and harness or the death of the pilot, Williams. Plaintiffs do not contend the failure of the seat and harness caused the aircraft to crash. On the contrary, the failure of these devices is attributed to the crash. Plaintiffs attribute the actual crash to an engine fire alleged to be the fault of either or both Cessna and Teledyne. Only the forthcoming proof, now somewhat shortened, will determine whether such a nice legal distinction will make an ounce of difference.

■ Mississippi law precludes imposition of liability on the basis of a "second accident" where the alleged defect did not cause or contribute to the initial mishap and did not arise from the intended normal use for which the product was manufactured. Applying Mississippi law to the present case, we conclude: (a) the failure of the seat and harness must be regarded as a separate or "second accident", and (b) the defendant, Cessna, was under no duty to design its seat and harness assembly, as a matter of ordinary intended usage, to withstand a high speed crash. Cessna's duty with respect to emergency landings of other situations is not before the court.

■ Even though a crash may have been a foreseeable result arising from the use of the aircraft, plaintiffs have not alleged any set of facts from which they could demonstrate that the seat and harness were flawed by hidden or latent defects which rendered the products unsafe for ordinary aircraft use. Al-

---

5. Maraist and Barksdale, Mississippi Products Liability—A Critical Analysis, 43 Miss. L.J. 139, 180 n. 200 (1972).

6. Ward v. Hudnell, 366 F.2d 247 (5th Cir. 1966).

though at this stage we cannot say what the "normal intended use" of these products was, we conclude, applying Mississippi law, the term would not include a high speed crash.

Plaintiffs, therefore, have not alleged any set of facts which would justify the imposition of liability on Cessna as a result of the failure of the seat and harness. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Cessna is entitled to partial judgment on the pleadings.