ble to the right of the second beneficiaries to take.

■ Inasmuch as *none* of the other claimants are entitled to the proceeds of the policies and have *no* legal interest therein (and obviously, they do not revert to the insurer) we are convinced that the proceeds should be paid to the administrator of the estate of the insured, the Owner of the policies, and so hold. An order will be entered directing the Clerk to pay to Sue Ann Martin Voirol, as administratrix of the estate of Ronald A. Martin, the entire amount, including interest, remaining in the registry of the Court, upon furnishing proof that she is presently authorized to act as such and has complied with all requirements of the law as to furnishing bond in an amount sufficient to protect all interested parties in light of the amount for distribution.

The foregoing Memorandum and Order constitutes our findings of fact and Conclusions of Law.

### JUDGMENT

The Court having this day entered its Memorandum Opinion embodying its findings of fact and conclusions of law,

NOW THEREFORE, in accordance therewith and for the reasons therein stated,

IT IS HEREBY ORDERED and ADJUDGED (1) that the claims of Helen A. Martin, Georgia Webb, Ronald A. Martin, Jr. and Richard A. Martin, Jr., by Shirley Schorege, as guardian of said minors, Sue Ann Martin Voirol, and Rebecca Martin, by Larry Church, as guardian of her Estate, and each of them, to the proceeds of insurance policies No. 78755612 and No. 79846066, heretofore deposited by plaintiff into the registry of the Court, be and the same are hereby respectively denied.

And (2) that the entire balance of said proceeds deposited by plaintiff into the registry of the Court, together with all interest thereon, be and the same is hereby awarded to Sue Ann Martin Voirol as administratrix of the Estate of Ronald A.

Martin, Deceased, and the Clerk of this Court is hereby directed to pay her said amount upon her furnishing proof that she is currently authorized to act as such and has complied with all requirements of the law as to furnishing bond in an amount deemed by the Probate Court sufficient to protect all interested parties in light of the amount to be distributed to her.

The **ESTATE OF** David L. **PORTNOY,** Deceased, Jerri Bridges, Administratrix, Plaintiff,

v.

The **CESSNA AIRCRAFT COMPANY,** Defendant,

v.

**MISSISSIPPI SCHOOL OF AVIATION,** et al., Attachment Defendants.

**Civ. A. No. S83–0011(R).**

United States District Court, S.D. Mississippi, S.D.

Feb. 20, 1985.

Floyd J. Logan, Gulfport, Miss., for Estate of David Portney.

Eaton A. Lang, Jr., Gulfport, Miss., Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for Cessna Aircraft Company.

Roy C. Williams, Megehee, Brown, Williams & Mestayer, Pascagoula, Miss., for Victory Aircraft Inc.

Robert Alan Byrd, Biloxi, Miss., Charles R. Davis, Alex A. Alston, Jr., David A. Bowers, Jackson, Miss., for Mississippi School of Aviation.

H. D. Brock, Greenwood, Miss., for Kimmel Aviation, Inc.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

The case in chief originally arose out of the crash of a military airplane, a Cessna 02A, in the waters of the Mississippi Sound near Bay St. Louis, Mississippi, on November 11, 1976. David L. Portnoy, a resident of Pennsylvania and Staff Sergeant in the Pennsylvania Air National Guard, was killed in the crash. Jerri Bridges, a Mississippi resident and secretary of counsel for the plaintiffs, was appointed Administratrix of the Estate of David L. Portnoy. Bridges, as Administratrix, instituted a products liability suit in the Federal District Court for the Southern District of Mississippi against Cessna Aircraft Company based on defects in the 02A aircraft as manufactured by Cessna. The wrongful death beneficiaries are Portnoy's brother and his mother and father.

The defendant, Cessna Aircraft Company, is a Kansas corporation with its principal place of business in Wichita. Cessna is not registered to do business in Mississippi. Bridges first attempted to acquire personal jurisdiction over Cessna by utilizing the Mississippi long arm statute, Miss.Code Ann. § 13–3–57 (1972). Cessna Aircraft Company filed a motion to dismiss on the grounds that Bridges could not utilize the Mississippi long arm statute's provisions since the decedent was a non-resident of Mississippi. Judge Harold Cox sustained Cessna's motion and the plaintiff subsequently appealed to the U.S. Fifth Circuit

Court of Appeals which affirmed Judge Cox's decision. 730 F.2d 286.

While Judge Cox's decision was pending on appeal, the Estate of Portnoy filed a second action in the Chancery Court of Hancock County, Mississippi, on October 29, 1982, requesting an order of attachment be issued binding money owed to Cessna "now or subsequently in the hands of" several attachment defendants. On November 2, 1982, the Chancery Court of Hancock County, Mississippi, entered an order that a writ of attachment be issued against the attachment defendants binding the property, effects and money in their hands, owned by or owed to Cessna Aircraft Company. Pursuant to the Chancery Court's order, an attachment bond in the amount of $10,000.00 was posted against a claim of $2,500,000.00 actual damages and $2,500,000.00 punitive damages.

Cessna Aircraft Company removed the case to Federal Court on January 4, 1983, and now submits before the Court a motion to dismiss contending (1) due process precludes the court from exercising quasi in rem jurisdiction since the property attached has absolutely no relation to the plaintiff's claim against Cessna, and (2) that the Mississippi attachment statutes, Miss.Code Ann. § 11–31–1 et seq. (Supp.1984) violate the due process clauses of the fifth and fourteenth amendments of the United States Constitution. (*See* Appendix.)

## I. CESSNA'S DUE PROCESS CHALLENGE

■ Cessna correctly states that the *International Shoe* requirement of due process was specifically made applicable to the assertion of jurisdiction via attachment in two recent landmark cases, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The due process to be afforded in a quasi in rem action requires more than the physical existence of property in the forum state. In particular, Cessna contends that these holdings specifically require that in order for the Court to exercise quasi in rem jurisdiction, the property attached must be

either the subject matter of the litigation or related in some way to the cause of action. Therefore, the existence of property in the forum state, if unrelated to the cause of action, is no longer sufficient for the assertion of quasi in rem jurisdiction over a non-resident. Cessna argues that none of these due process requirements established by *Shaffer* are met since the cause of action does not bear any reasonable relationship to the business allegedly done by Cessna in Mississippi, is not the subject matter of this litigation, nor is it related to the property sought to be attached. After careful review of the cases governing the connexity requirement and federal due process, it is the opinion of this Court that neither the U.S. Supreme Court nor the U.S. Fifth Circuit Court of Appeals require a causal relationship to be a determinative factor of due process.

 The century old decision of *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878), identified the exercise of a court's jurisdiction as being in personam, in rem, or quasi in rem. When exercising in personam jurisdiction, a court may act directly upon an individual in determining his liability and enforcing a judgment. In quasi in rem actions, jurisdiction is based on property located within the state's sovereign through which the court applies the property of the defendant to the satisfaction of a claim against him. To exercise in personam jurisdiction over the person of a foreign corporation in a diversity action involves questions of both state and federal law. Basically, there must be a state long arm statute which grants personal jurisdiction and the exercise of such jurisdiction must be consistent with the due process requirements of the United States Constitution. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir.1974). Only after all statutory requirements prescribed in a state's long arm statute are satisfied must the court determine whether the assertion of that jurisdiction exceeds constitutional bounds. *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1264 (5th Cir. 1981).

The United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) stated what due process was constitutionally required when a court was to exercise personal jurisdiction over a litigant:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional motions of fair play and substantial justice."

*Id.* See also *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

 These decisions have been interpreted by the Fifth Circuit to constitute a dual test for determining the due process issue. First, "there must be some minimum contact with the state which results from an affirmative act of the defendant." Secondly, "it must be fair and reasonable to require the defendant to come into the state and defend the action." *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 643 (5th Cir.1980); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494 (5th Cir.1974). In assessing the minimum contacts which exist with a state, the mere number is not determinative. *Quasha v. Shale Development Corp.*, 667 F.2d 483, 488 (5th Cir.1982). Fairness is to be determined from a weighing of all the relevant factors pertaining to each individual case. "[F]ew answers will be written in black and white. The greys are dominant and even among them the shades are inumerable." *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (quoting *Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948)). What is determinative is whether the total contacts with the forum "support an inference that the nonresident defendant purposefully availed himself of the benefits of conducting business in the forum." *Standard Fittings*, 625 F.2d at 643; *Product Promotions*, 495 F.2d at 495; *Quasha*, 667 F.2d at 483. Such contacts must be delib-

erate and not fortuitous, "so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Standard Fittings*, 625 F.2d at 643; *Product Promotions*, 495 F.2d at 496. In judging these contacts, the court is to focus on "the relationship among the defendant, the forum, and the litigation...." *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2580.

The Fifth Circuit has identified three primary and two secondary factors which may be used in determining whether due process has been afforded in the exercise of personal jurisdiction over a foreign corporation.[1] These include, respectively, the quantity of contacts, the nature and quality of the contacts, the connection of the cause of action to the contacts, the interest of the forum in providing a forum for its residents, the convenience to the parties, and the nature and character of the business.

The defendant contends that since there is not a connection between the cause of action and the property attached, or Cessna's contacts with Mississippi, the exercise of jurisdiction would deprive Cessna of due process. To follow defendant's argument would formulates a third prerequisite of connexity to the test of due process rather than treating this factor as just one of the primary elements to be weighed in consideration with the others.

The U.S. Supreme Court has expressly refused to make the causal connexity requirement determinative of due process in the exercise of in personam jurisdiction, and the Fifth Circuit has repeatedly refused to impose its own stricter interpretation. Following the decision in *International Shoe*, the Supreme Court specifically held in *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 445–449, 72 S.Ct. 413, 418–420, 96 L.Ed. 485 (1952) that due process would not be offended when a state exercises jurisdiction over a non-resident defendant that carries on sufficiently

substantial activities within a state unrelated to the cause of action. Just recently the U.S. Supreme Court stated that:

Even when a cause of action does not arise out of or relate to the foreign corporation's activities in the foreign state, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation. (citations omitted).

*Helicopteros Nacionales De Colombia v. Hall*, — U.S. —, —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

The Fifth Circuit has followed the precedent of the U.S. Supreme Court in holding that federal due process does not require the causal connexity as argued by Cessna. "It is true that due process allows a state to assert jurisdiction over a nonresident defendant that carries on continuous and systematic activities in the state unrelated to the cause of action." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1265 (5th Cir. 1981). "Louisiana law does not require the causal connexity, *nor does federal due process.*" (emphasis added). *Pedelahore v. Astropark, Inc.*, 745 F.2d 346 (5th Cir. 1984); *Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 749–750 (5th Cir.1977).

▆▆▆ Cessna cites a series of Fifth Circuit cases in support of their argument that there must be a sufficient nexus between the activities of the non-resident within the state and the plaintiff's cause of action. *Aycock v. Louisiana Aircraft, Inc.*, 617 F.2d 432 (5th Cir.1980); *Husted v. Piper Aircraft Corp.*, Civil Action No. J82–0038(N) (S.D.Miss. March 2, 1983); *Smith v. DeWalt Products Corp.*, 743 F.2d 277 (5th Cir.1984).[2] Although these cases did require a causal connection between the cause of action and the defendant's activities in the forum, they did so not as a matter of federal due process but rather as the result of a state statutory requirement specifically contained within the Mississippi

---

1. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494 n. 17 (5th Cir.1974); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 643 (1980).

2. See also *Mladinich v. Kohn*, 250 Miss. 138, 164 So.2d 785 (1964) and *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1269 n. 10 (5th Cir.1983).

long arm statute on which in personam jurisdiction was predicated.[3] In addition to the minimum contacts that are needed to ensure the due process rights of non-resident defendants, a forum state may impose its own jurisdictional requirements, such as those outlined in the Mississippi long arm statute. "[B]y its own terms," the Mississippi long arm statute limits in personam jurisdiction "to those cases in which the cause of action accrues from or is incident to the activities of the nonresident defendant." *Smith v. DeWalt*, 743 F.2d at 279; *Aycock*, 617 F.2d at 434–435. Therefore, the requirement of a causal connexity for the exercise of personal jurisdiction is entirely a requirement of the forum. Had the plaintiff been entitled to utilize the Mississippi long arm statute, jurisdiction would have still been questionable since "[t]he mere fact that [Cessna] markets its products nationally and that some of these goods find their way into Mississippi is not a sufficient nexus to subject [Cessna] to in personam jurisdiction under the 'doing business' provision of the Mississippi long arm statute." *Smith v. DeWalt*, 743 F.2d at 279.

 Though mortally wounded by this blow, the plaintiff fights on bravely by attempting to assert quasi in rem jurisdiction via attachment of certain outstanding accounts owed Cessna by its Mississippi dealers. The question thus presented is whether the causal connexity requirement should be extended to cases where jurisdiction is asserted through attachment. Since this requirement is not mandated by federal due process, this Court feels that it should not be extended.

Until recently, the technical legal distinction, or fiction, was that in rem or quasi in rem jurisdiction did not impose a personal liability on the property owner since he was not before the Court. Such jurisdiction only indirectly affected the defendant by an in rem judgment adverse to his interest in the property subject to the court's disposition. This reasoning allowed many courts to evade application of due process consideration. However, in June of 1977 the U.S. Supreme Court decided *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in which the Court concluded that to continue to recognize the fiction that assertion of jurisdiction over the person "would serve only to allow state-court jurisdiction that is fundamentally unfair to the defendant." *Id.* at 212, 97 S.Ct. at 2584. Therefore, "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe*, and its progeny." *Id.* No longer would the mere presence of a defendant's property within the forum be sufficient to confer jurisdiction by a court, but rather the same due process requirement of minimum contacts reflecting "fair play and substantial justice" which governs in personam jurisdiction would be applicable. After all, the purpose of obtaining jurisdiction through attachment—rationalized the court—is to compel the defendant to enter a personal appearance. If a direct assertion of personal jurisdiction would violate the constitution then indirect assertion should be equally impermissible. *Id.* at 209, 97 S.Ct. at 2582. Such minimum contacts are not sufficient when the *only* con-

---

**3.** Miss.Code Ann. § 13–3–57 (1972), the statute in effect at the time of the present accident, read as follows:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.

tact between the defendant and the forum is property located in the state completely unrelated to the cause of action. In such situations, jurisdiction must have some other foundation. *Id.* at 213, 97 S.Ct. at 2584. *Shaffer* did not state as a rule per se that under all situations, regardless of the total contacts a non-resident may have with the forum, due process requires a causal connection between the property attached and the cause of action. To do so would create a higher constitutional standard of due process to be afforded when evaluating in rem or quasi in rem jurisdiction. Rather, *Shaffer* imposed the *same* due process requirements of *International Shoe* and its progeny governing in personam situations to cases involving the assertion of jurisdiction by attachment.

*Shaffer* and the subsequent case of *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), specifically left room for the assertion of quasi in rem jurisdiction regardless of the relationship of the property attached to the litigation provided the court's analysis of the defendant's total contacts with the forum satisfy the "traditional motions of fair play and substantial justice."

These are cases where the property which now serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a state might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction.

*Shaffer,* 433 U.S. at 208–209, 97 S.Ct. at 2581–2582.

We held in *Shaffer* that the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is

a contact between the defendant and the forum, and it may suggest the presence of other ties. 433 U.S. at 209 [97 S.Ct. at 2582]. Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.*

*Rush,* 444 U.S. at 328, 100 S.Ct. at 577.

Therefore, the causal connexity requirement is not a constitutional standard of due process which must exist before either in personam or quasi in rem jurisdiction may be exercised. As we have seen, however, it is a state statutorily imposed jurisdictional requirement outlined in the Mississippi long arm statute governing in personam jurisdiction.

■■■ The Mississippi attachment statutes governing the exercise of in rem jurisdiction, Miss.Code Ann. §§ 11–31–1 *et seq.* (Supp.1984) contain no such causal connexity requirement which the legislature was free to impose when it recently amended the statute. Therefore, the test of proper jurisdiction is narrower being simply "whether there are sufficient minimum contacts to make it fair and just that the foreign corporation be required to come to [Mississippi] to defend the action that was begun by attachment." *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017, 1022–1023 (2nd Cir.1978).

Since this cause has been taken under advisement, the Mississippi Supreme Court has reached a similar conclusion concerning the causal connexity requirement and its relation to due process in quasi in rem jurisdictional cases. In *Administrators of the Tulane Educational Fund v. Cooley,* 462 So.2d 696 (Miss.1984) [4], the court stated that *Shaffer* specifically omitted "any requirement of a direct relationship between the res seized and the litigation." *Id.* at 703. The fact that Tulane's tortious conduct occurred in Louisiana was of no constitutional consequence.

---

4. Plaintiff Duane Cooley sought recovery for the alleged wrongful death of his wife at the Tulane Hospital and Medical Center in New Orleans, Louisiana. Cooley brought an attachment ac-

tion seizing proceeds of debts owed to Tulane by Mississippi parties having an aggregate value of $147,677.50.

Similarly, the fact that there is no substantial connection between the property owned by Tulane in this state and seized by the process of the Court and the operative events giving rise to Cooley's claim of liability on the part of Tulane is *per se* of no constitutional consequence. (citations omitted).

Tulane may be subject to an adjudication of its rights in the property seized only if, *in addition* to the seizure of that property, Tulane has contacts with Mississippi such that maintenance of the suit does not offend traditional motions of fair play and substantial justice. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

*Id.* at 703.

We must now judge the contacts existing between Cessna and Mississippi in compliance with the guidelines illustrated earlier to determine if they pass constitutional muster and permit the Court to exercise quasi in rem jurisdiction in this matter.

In two previous cases the U.S. District Court for the Northern District of Mississippi has exercised in personam jurisdiction over Cessna.[5] These cases, however, cannot be used to influence this Court in deciding the issue sub judice for each case is to be considered individually based on the contacts contained therein. In addition, there are several factual distinctions between the present case and those cited below which bear directly on what contacts exist with the forum diminishing the relevance of their precedential value.

The evidence presented before the court reflects that Cessna has never been licensed or qualified to do business in Mississippi, maintains no type of facility in Mississippi, has no interest in any corporation doing business in Mississippi, has no interest in any personal property in Mississippi, paid no taxes to the State of Mississippi, nor maintained any offices in Mississippi.

This is not to say that Cessna maintains no contacts with this forum. Cessna presently has dealership agreements with the three attached defendants, Kimmel Aviation, Victory Aircraft, and Mississippi School of Aviation.

Kimmel Aviation has conducted its business in the agricultural field for approximately 25 years. In 1968 it became a Cessna agricultural aircraft dealer performing such services as agricultural aircraft sales, parts, service, crop dusting, and maintenance. Since 1982 Kimmel Aviation has sold a total of three agricultural planes. The total dollar value of business with Cessna involving all types of transactions over the past year was $214,296.33. In better years Kimmel has sold as many as 70 aircraft and conducted business with Cessna exceeding 2 million dollars.

Victory Aircraft became associated with Cessna in 1983. Although it has never sold a Cessna aircraft, the volume of business Victory has conducted with Cessna exceeds $500,000.00.

Mississippi School of Aviation operates a flight school as well as being an operative Cessna dealer since 1976.[6]

Cessna permits the independent dealerships to display the Cessna logo. It also engages in a co-operative advertising program in Mississippi. Cessna sends marketing representatives, zone managers, and district managers into Mississippi on a regular basis, as well as providing technical experts in effecting repairs when warranted. Sales of Cessna aircraft are financed through Cessna's wholly owned subsidiary, Cessna Finance Corporation.

---

**5.** *F.L. Crane Co. v. Cessna Aircraft Co.*, 73 F.R.D. 384 (N.D.Miss.1976); *Williams v. Cessna Aircraft Corporation*, 376 F.Supp. 603 (N.D.Miss. 1974). *See also Pattillo v. Cessna Aircraft Corp.*, 379 So.2d 1225 (Miss.1980).

**6.** Since 1960 Cessna has had written dealership or pilot center agreements with the following entities at the following locations in Mississippi:

Gulf Park Aviation, Inc., Ocean Springs, MS; Miller-Wills Aviation, Inc., Jackson, MS; FTC Walston Wings, Inc., Olive Branch, MS; Centaur Aviation, Inc., Olive Branch, MS; Cleveland Air Services, Cleveland, MS; Thedford Aero, Inc., Greenville, MS; McComb Flying Service, McComb, MS; Aero International, Inc., Gulfport, MS; Port City Aviation, Vicksburg, MS.

■ Cessna points out that no planes are sold on consignment in Mississippi, nor does it ship or deliver any aircraft to Mississippi for sale. All planes are sold from its Wichita facility with transportation being the concern of the purchaser. Contrary to what may be suggested, this can hardly be considered the case in which Cessna aircraft find their way into Mississippi via the unilateral action of the purchaser. Nor is it "a case in which the seller has structured its primary conduct to avoid contact with the forum state. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, at 297, 100 S.Ct. 559 at 567, 62 L.Ed.2d 490 (1980). Rather, by its own affirmative acts [Cessna] has introduced its products into Mississippi for use in that state." *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1271 (5th Cir.1983). By entering into dealership contracts with Mississippi residents, allowing for the display of their logo, offering co-operative advertising, providing financial assistance, and supplying support personnel, Cessna has made a deliberate effort to serve the Mississippi market and place its goods in Mississippi.

Two other factors relevant in evaluating due process include "the interest of the state in providing a forum for the suit", and "the relative conveniences and inconveniences to the parties." *Brown v. Flowers,* 688 F.2d 328, 333 (5th Cir.1982); *Austin v. North American Forest Products, Inc.,* 656 F.2d 1076, 1090 (5th Cir.1981). ■ Although plaintiff's residence is not a separate requirement sufficient in itself to defeat jurisdiction,[7] it is relevant in considering the state's interest in providing a forum. Under the facts of the present case, it is hard to visualize what interest Mississippi may have in providing a forum for the redress of injury suffered on behalf of a non-resident by a product having no connection with this state.[8] However, it is apparent that parties other than the plaintiff who reside in Mississippi, such as the dealers whose debts are subject to attachment, will be an indirect part of the litigation. Mississippi certainly has an interest as far as these attached defendants are concerned. Also, forcing Cessna to litigate this case in Mississippi would not create such an inconvenience to Cessna as to deny it due process.

Therefore, it is the opinion of this Court that in economic reality the defendant maintained contacts with the State of Mississippi. Although the plaintiff's cause of action is unrelated to these contacts, these economic contacts, when coupled with other relevant factors, are substantial enough to indicate that Cessna "has 'purposefully availed' itself of the privilege of conducting activities in Mississippi and its 'conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there.'" *DeMelo,* 711 F.2d at 1271.

## II. THE CONSTITUTIONALITY OF THE MISSISSIPPI ATTACHMENT STATUTE

Cessna has also raised several contentions in regard to the Mississippi Attachment Statute. Constitutional infirmities with the statute are argued to include the statute's failure to (1) require a nexus between the property attached and the underlying claim; (2) provide for a pre-seizure hearing; (3) provide for a limited appearance; (4) require similar bond requirements; and (5) to specifically limit attachment to property and debts existing before service of the order of attachment. The

---

**7.** *Keeton v. Hustler Magazine, Inc.,* — U.S. —, —, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984).

**8.** The other individual killed in the crash, John Baggs, was a resident of Texas. His estate promptly filed a products liability action against Cessna in the U.S. District Court for the Northern District of Texas. A judgment favorable to the plaintiffs in that action was rendered in July of 1981. Portnoy's estate filed its action subsequent to the Baggs judgment in Mississippi to take advantage of this state's six year statute of limitations after being denied access to the forum of David Portnoy's resident, Pennsylvania, by that state's prescription statute.

court briefly addresses these contentions as follows.

1. The Statute Fails to Require a Nexus Between the Property Attached and the Underlying Claim.

This issue has been previously discussed. As illustrated above, the gravamen of any attachment action focuses on whether there exists sufficient minimum contacts between the defendant corporation and the forum. The nature of the property attached is only one contact to be considered provided the actual situs of the property is within the forum. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Administrators of the Tulane Education Fund v. Cooley*, 462 So.2d 696 (Miss.1984);

2. The Statute Does Not Provide for a Pre-Seizure Notice or a Pre-Seizure Hearing.

In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the court struck down the replevin laws of Florida and Pennsylvania for failure to afford an individual "a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 82, 92 S.Ct. at 1995 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). However, *Fuentes* apparently did not extend the requirement of a pre-attachment hearing to cases which involved the act of attachment in order to secure jurisdiction in state court since this is considered "clearly a most basic and important public interest." *Id.* 407 U.S. at 91, n. 23, 92 S.Ct. at 1999, n. 23. In *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Supreme Court upheld the Louisiana sequestration statute as comporting with due process even though it did not provide for a pre-seizure notice and hearing. The court stated that the import of *Fuentes* and other due process

cases did not result in the strict requirement of a pre-seizure hearing.

They merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post termination hearing is provided. The usual rule has been "[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." (citations omitted).

*Mitchell v. W.T. Grant Co.*, 416 U.S. at 611, 94 S.Ct. at 1902.

In *Merrill Lynch Government Securities, Inc. v. Fidelity Mutual Savings Bank*, 396 F.Supp. 318 (S.D.N.Y.1975), the plaintiff ex parte applied for an order of attachment of the defendant's New York bank account to obtain quasi in rem jurisdiction. The attachment was granted under New York attachment law upon the ground that the defendant was a foreign corporation. The defendant moved to vacate the attachment on the ground that it was issued without prior notice and hearing in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, and that New York State's prejudgment attachment statute under which the attachment order was granted was unconstitutional. The Court, in denying the defendant's motion to vacate the order of attachment, stated: "This Court is of the view that attachment without prior notice of a nonresident's property in order to acquire *quasi in rem* jurisdiction when personal jurisdiction is lacking or doubtful does not deny due process of law." *Id.* at 320.

 This court shares a similar view in finding that the Mississippi attachment statute affords adequate due process by granting the defendant, upon request, an immediate post-seizure hearing to seek dissolution of the order of attachment. At such hearing, the complainant has the burden to establish by satisfactory proof the

grounds for the attachment, the existence of the claim, and the impairment or impediment which a failure to continue the attachment could bring to the complainant's ability to recover. Miss.Code Ann. § 11–31–2 (Supp.1984).

3. The Statute Prohibits a Defendant from Making a Limited Appearance to Defend His Claim to the Property Attached.

The defendant contends that the Mississippi attachment statute fails to provide for the attachment defendant who is not otherwise subject to in personam jurisdiction to make a limited appearance to defend his claim to the property attached. Although Miss.Code Ann. § 11–31–2 (Supp.1984) does provide for a special appearance to seek dissolution of the order of attachment, Miss.Code Ann. § 11–31–1 (1972) provides that judgment will be entered against the defendant in personam if he enters his appearance to defend the case in chief. Cessna argues that such a procedure imposes an unconstitutional condition on Cessna's right to protect its property.

A split of authority has always existed as to whether a defendant should be entitled to defend on the merits but only be subject on judgment to the value of the property proceeded against. Although such a split exists, the U.S. Supreme Court has never attempted to dispose of the conflict. Neither did the court in *Mississippi Chemical Corp. v. Chemical Construction Corp.*, 444 F.Supp. 925 (1977) address the lack of a limited appearance as a constitutional infirmity when stating the reasons the Mississippi attachment statutes were unconstitutional. One reason this issue may have been skirted is that *Shaffer's* requirement of minimum contacts in attachment cases substantially reduces the significance of the limited appearance. Restatement (Second) of Judgments § 8 comment g, (1982).

Although the conflict may continue in a more limited sense, this court is not of the opinion that precedent is so definitive as to require a declaration that Miss.Code Ann. § 11–31–1 (1972) is unconstitutional in failing to provide for a limited appearance. In fact, Cessna fails to cite, and this Court fails to find any case law in which a state statute which provided for a general appearance was held unconstitutional.

Cessna does not deny the fact that it is allowed access to this Court in order to defend on the merits the claims made by the complainant. Rather, Cessna states that Mississippi's general appearance procedure imposes an "unconstitutional condition" upon its right to protect its property from appropriation. 73 Harv.L.Rev. at 954, *quoted in Dry Clime Lamp Corporation v. Edwards*, 389 F.2d 590, 596–597, n. 8 (5th Cir.1968). This issue was presented before a federal court in *U.S. Industries, Inc. v. Gregg*, 58 F.R.D. 469 (D.Del.1973) with arguments identical to those presented by Cessna. In upholding the Delaware statute which prohibited a limited appearance to defend on the merits without subjecting oneself to the in personam jurisdiction of the Court, Judge Stapleton noted that conditions existing on the exercise of a fourteenth amendment right is not unconstitutional per se. *Id.* at 478. "The question, accordingly, is not whether [Cessna's] constitutional right to defend has been conditioned, but rather whether it has been unreasonably conditioned." *Id.* at 479, (citing *York v. Texas*, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890); *Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938); *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)). In weighing the public interest and the burden imposed upon the defendant from which reasonableness is to be determined, the Court concluded that a general appearance was not an unreasonable condition, and as such it did not offend due process. *U.S. Industries*, 58 F.R.D. at 479–481.

Beyond this basic holding that a statute's failure to provide a limited appearance is not unconstitutional, this Federal District Court is faced with the problem of following either Mississippi law or following what it considers to be the federal rule of this Circuit. "Most of the existing federal cases dealing with limited appearances seem to ignore state law, ..." 4

Wright S. Miller, Fed.Prac. 8 Proc. § 1123 p. 514. In particular, the Fifth Circuit failed to follow Mississippi law in providing for only a general appearance when it considered the case of *Dry Clime Lamp Corporation v. Edwards*, 389 F.2d 590 (5th Cir.1968). This was a removed case with suit beginning in the Mississippi state court under the Mississippi attachment statutes. Without touching upon the constitutionality of Mississippi's failure to provide for a limited appearance, the Court expressed its discontent with forcing a defendant to submit to the Court's in personam jurisdiction in order to defend its property interest. The Court held:

> [T]hat in a removed case commenced in state court against a nonresident defendant by garnishment or attachment of a debt owed by a resident, which debt is wholly unrelated to the subject matter of the principal suit, if the nonresident defendant timely objects to in personam jurisdiction the court may not enter a judgment which operates against him in personam except insofar as it affects his interest in the funds garnished or attached, even though the nonresident defendant, after properly asserting his objections to the jurisdiction, appears and contests the merits of the claim of the principal suit.

*Id.* at 595–596.

 It is not the prerogative of this Court to decide whether following a federal rule in a diversity action which is contrary to state law comports with the reasoning behind the *Erie* doctrine. It is sufficient to say that this court favors the granting of a limited appearance to the defendants in a quasi in rem action, and since the Fifth Circuit has provided what this court interprets to be a federal rule granting such an appearance, Cessna should be permitted to contest the merits of the principal suit without subjecting itself to an in personam judgment.

4. The Statute's Bond Requirements are Unfair and Discriminatory as to an Attached Defendant.

 While the amended statute now requires that the plaintiff post a bond, a plaintiff's bond is required to be only "in an amount satisfactory to the Chancellor." Miss.Code Ann. § 11–31–2(2)(c) (Supp.1984). Yet the defendant must post a bond in the amount of 125% of the value of the property that has been attached or 125% of the plaintiff's total demand, whichever is less, to regain the immediate possession of his property. Miss.Code Ann. § 11–31–2(3)(b) (Supp.1984). Cessna contends that such a procedure is entirely unfair. However, the court is of the opinion that a rational basis exists for the distinction. The attached defendant must stand ready to make the plaintiff whole up to the amount of the property actually attached. Any amount less would leave the complainant unprotected against actions by the defendant to remove the res from the forum. In other words, the bond is a security or substitution for the defendant's originally attached property. The complainant, unlike the attached defendant, is only liable for actual damages and attorney fees should the attachment be determined by the Chancellor to have been brought in bad faith. A determination of this issue will usually follow an immediate post-seizure hearing to which the defendant is entitled. Such an immediate hearing provides possible relief for the defendant before his damages become compounded. It would be inequitable to require the complainant to post a bond equal in value to the res when in all reality any possible damage to the defendant is anticipated to be minimal. The Mississippi attachment statute attempts to balance the inequities of arbitrary bond requirements by allowing the Chancellor to weigh the circumstances of each case and prescribe a bond which assures protection of the defendant without punishing the complainant.

In any event, Miss.Code Ann. § 11–31–2 (Supp.1984) does not prohibit the Chancellor from exercising his inherent authority to make equitable adjustments concerning plaintiff's bond when the need arises. A defendant who feels that the plaintiff's bond is insufficient to protect his interest can always file a motion seeking a bond increase.

### 5. Statute is Silent as to Future Accruing Debts.

■ The defendant contends that the attachment statute does not specifically limit the attachment of funds due and owing Cessna arising out of Mississippi from operating continuously for an indefinite period of time. The Court, however, finds that the statute is self-limited in application which obviates any necessity in determining the constitutionality of attachment of indebtedness subsequent to the actual service of the writ.

■ As a general rule, an order of attachment will cover only the indebtedness existing at the time of the attachment and will not reach debts subsequently acquired.[9] Any attachment which is viewed as binding a subsequent indebtedness is usually the product of a particular statutory provision which sets an actual time as to when the attachment becomes fixed. This time has been variously set in jurisdictions to be either the time of service of the writ, the time of answer, the time of trial, or the time of judgment.[10] *Id.*

■ Miss.Code Ann. § 11–31–3 (Supp. 1984) states that "it shall be sufficient to bind such effects or indebtedness that the order of attachment ... be served upon the persons ... owing such indebtedness." Therefore, an indebtedness is not bound until the order of attachment is actually served. "When property is attached in these proceedings, the service of process creates a lien on the property and the lien is established when the writ is served." *Associates Discount Corporation v. Clark*, 240 Miss. 723, 128 So.2d 535, 536–537 (1961). *See also Geo. H. Jet Drilling Co. v. Tibbits*, 230 F.Supp. 58 (W.D.La. 1964). Such statutory language has not been construed by the courts to bind all indebtedness which arises subsequent to

service of the writ of attachment. This issue was specifically addressed in the Mississippi Supreme Court case of *Aetna Insurance Co. v. Robertson*, 128 Miss. 387, 88 So. 883 (1921), in which the court interpreted almost identical statutory language to have the effect of binding only those "effects of the nonresident defendants at the time of the service, and at least until answer has been filed, or if no answer is filed, until the return day." *Id.* 88 So. at 891. Such interpretation limits the attachment of subsequent indebtedness to 30 days at most past the actual service of the attachment order upon the attached defendant.

■ The order of attachment issued by the Chancellor purports to bind "the property, effects and money in the hands of said co-defendants owned by or owed to the said nonresident defendant, Cessna Aircraft Company, subjecting any said property or indebtedness now or hereafter owned by or owing to the said nonresident co-defendant, Cessna Aircraft Company, to the demand of the Complainant herein." Such an open-ended attachment is clearly contrary to that which is permissible under the Mississippi statute. Therefore, the Chancellor's order of attachment should be modified to bind only that property or indebtedness existing at the time the writ of attachment was served, and any subsequent property or indebtedness owned by or owing to Cessna up to the time the respective defendants' answers were filed, or if no answer was filed, until thirty days after service was rendered.[11]

Furthermore, the plaintiff is directed to make an accounting of this limited indebtedness to this Court within forty-five (45) days for determining whether the attached property aggregately exceeds the sum or value of ten thousand dollars as required

**9.** *Messall v. Suburban Trust Co.*, 244 Md. 502, 224 A.2d 419, 421 (1966); 6 AM JUR 2d § 461.

**10.** Several state statutes have been cited by the plaintiffs which have provisions allowing for *subsequent attachment*. The defendant has failed to present any authority which supports its contention that such legislation is unconstitu-

tional. Therefore, even if the Court were to find that the Mississippi Attachment Statute specifically provided for open-ended attachment, it would be hesitant to hold that such a provision was unconstitutional.

**11.** Miss.R.Civ.P. 12(a)

by 28 U.S.C. § 1332 for this Court to exercise jurisdiction.

## CONCLUSION

Neither the U.S. Supreme Court, nor the U.S. Fifth Circuit Court of Appeals, has required the cause of action to arise out of a foreign corporation's activities in the state in order to satisfy due process. All that is required is that the foreign corporation have sufficient minimum contacts with the forum so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." In addition to the minimum contacts, a state may impose its own jurisdictional requirements. The Mississippi attachment statutes fail to require a causal connexity between the property attached and the cause of action. Therefore, as long as it is determined that Cessna has sufficient minimum contacts with Mississippi due process is satisfied. Having reviewed all such contacts, it is the opinion of this Court that sufficient minimum contacts exist between Cessna and the State of Mississippi to subject Cessna to the jurisdiction of this forum.

It is also the opinion of this Court that none of the contentions raised by the defendant were substantiated to the degree necessary to warrant a holding that the Mississippi attachment statutes are unconstitutional. Miss.Code Ann. § 11–31–2 (Supp.1984) requires a complainant to present to the Chancellor a complaint accompanied by an affidavit. The affidavit is to provide a detailed statement of the facts and grounds on which the complainant bases his claim. Upon finding that the complainant's ability to recover the amount of his claim may be significantly impaired or impeded, the Chancellor may issue an order of attachment. The complainant is to then post a bond for the protection of the defendant. The defendant is entitled to an immediate post-seizure hearing, in which he is granted a special appearance, to determine the validity of the seizure. Finally, the defendant may regain possession of his property by posting a bond for the protection of the complainant. In the case sub judice, the above procedures were complied with and afforded to the defendant.

However, by allowing the complainant to attach all subsequent property and indebtedness of the defendant, the Chancellor's order exceeds in execution of the boundaries imposed by the attachment statute and state court interpretation. Therefore, the order of attachment should be modified to concur with the holding of this opinion. The plaintiff is directed to make an accounting to this Court of all indebtedness attached in accordance with this Court's modification of the Chancellor's order within forty-five (45) days.

An order in accordance with the opinion of this Court shall be provided as set forth in the Local Rules.

## APPENDIX

### MISSISSIPPI ATTACHMENT STATUTES

| Sec. | |
|---|---|
| 11–31–1 (1972). | Jurisdiction; debtors. |
| 11–31–2 (Supp.1984). | Application; determination. |
| 11–31–3 (Supp.1984). | How effects or indebtedness bound. |

Miss.Code Ann. § 11–31–1. Jurisdiction; debtors.

The Chancery Court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any nonresident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident, absent or absconding debtor. The court shall give a decree in personam against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.

Miss.Code Ann. § 11–31–2 (Supp.1984). Application; determination.

(1) Upon the filing of the bill of complaint, the complainant may apply for an order of attachment by presenting to the chancellor the bill, and an affidavit which shall include the following:

(a) A statement that the action is one described in section 11–31–1, and is brought against a defendant described in said section 11–31–1.

(b) A detailed statement of the facts and grounds which entitle the complainant to an order of attachment including a statement of the specific reasons why the complainant's ability to recover the amount of his claim may be endangered or impeded if the order of attachment is not issued.

(c) A statement of the amount the plaintiff seeks to recover.

(d) A statement that the complainant has no information or belief that the claim is discharged in a proceeding under the Federal Bankruptcy Act (11 U.S.C., Section 1, et seq.), or that the prosecution is stayed in a proceeding under the Federal Bankruptcy Act.

(e) A description of the property to be attached under the writ of attachment and a statement that the complainant is informed and believes that such property is not exempt from attachment or seizure under section 85–3–1.

(f) A listing of other persons known to the complainant who may have an interest in the property sought to be attached together with a description of such interest.

(2) The chancellor shall examine the affidavit and the bill of complaint and may, in term time or in vacation, issue an order of attachment with respect to such property under the following conditions:

(a) The chancellor finds that unless the order of attachment is issued, the complainant's ability to recover the amount of his claim may be significantly impaired or impeded.

(b) The chancellor finds that the affidavit establishes a prima facie case demonstrat-

ing the complainant's right to recover on his claim against the defendant.

(c) The complainant gives security in an amount satisfactory to the chancellor to abide further orders of the court and to protect the defendant from injury should the action of attachment be judicially determined to have been wrongfully brought.

(3)(a) If such an order of attachment is issued, the defendant shall, upon request, be entitled to an immediate post-seizure hearing to seek dissolution of the order of attachment. Such post-seizure hearing shall have precedence on the docket of the chancery court over all other matters except similar matters previously filed. At such hearing, the chancellor shall order dissolution of the order of attachment unless the complainant establishes by satisfactory proof the grounds upon which the order was issued, including the existence of a claim as described in section 11–31–1, and the impairment or impediment which a failure to continue the attachment could bring to the complainant's ability to recover the amount of such debt. An appearance by the defendant at the post-seizure hearing shall be considered a special appearance and not a general appearance for the purposes of personal jurisdiction over the defendant.

(b) In the alternative, a debtor may regain immediate possession of the property attached by giving security satisfactory to the chancellor in an amount equal to one hundred twenty-five percent (125%) of the value of the property attached or one hundred twenty-five percent (125%) of the amount of the claim, whichever is less.

(c) If the chancellor should determine that the attachment was not brought in good faith, then the chancellor in his discretion may award actual damages (including reasonable attorney's fees) to the defendant.

Miss.Code Ann. § 11–31–3. How effectors or indebtedness bound.

When a bill shall be filed for an attachment of the effects of a nonresident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness

of persons in this state to such nonresident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness that the order of attachment together with a copy of the bill of complaint and affidavit be served upon the persons possessing such effects or owing such indebtedness.